SHIPTON SUPPLY CO., INC., a corporation, and William Cooper and Nephews, Inc., a corporation, Appellants (Defendants below),

v.

Richard BUMBACA, Appellee (Plaintiff below).

No. 4128.

Supreme Court of Wyoming.

Jan. 29, 1973.

Bruce P. Badley, Sheridan, for appellant, William Cooper and Nephews, Inc.

Redle, Yonkee & Arney, Sheridan, for appellant, Shipton Supply Co., Inc.

Burgess, Kennedy & Davis and Henry A. Burgess, Sheridan, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Plaintiff, Richard Bumbaca, sued defendants, Shipton Supply Co., Inc., and William Cooper and Nephews, Inc., alleging that the Cooper firm manufactured a fly-killing product known as Del-Tox and sold and distributed such product to Shipton Supply Co., which on June 20, 1970, sold him a half-gallon of the product for valuable consideration; that the next day plaintiff mixed the Del-Tox with water, sprayed his cattle, and later that day found certain of them sick and others dying from organic phosphate poisoning caused by the spraying; that he lost ten steers (value, $2,430), the remaining steers lost weight, and he incurred certain veterinarian expense and labor, all to his damage in the sum of $6,422. The complaint was in two causes, one for negligence "in that they [defendants] did not exercise care in:

"a) That they did not properly instruct the user of their products in the use of an inherently dangerous substance.

"b) That the use of the product of Defendants was toxic to cattle.

"c) That Defendants manufactured, sold, and distributed a dangerous substance not fit for the purpose and use for which sold."

Plaintiff included a second claim alleging implied and express warranties.

The defendants filed separate answers, denying generally; and Shipton Supply Co. cross-claimed, demanding judgment against Cooper for the amount of any damages that might be adjudged against it in plaintiff's favor.

The case was tried to the court sitting without a jury, resulting in a judgment for plaintiff in the sum of $5,100, from which defendants have appealed, urging that four circumstances require reversal of the judgment:

1. Plaintiff did not follow the directions on the label of Del-Tox.

2. Plaintiff failed to prove a defective product.

3. Plaintiff failed to show his injury was proximately caused by defendants.

4. Testimony of plaintiff's experts about the properties of Del-Tox was self-refuting.

The relevant facts are uncomplicated and undisputed. On June 20, 1970, plaintiff bought a half-gallon of Del-Tox from the Shipton company. That product, containing dioxathion, an organophosphorus compound, could be given up to a threshold or toxic level with no adverse effects.[1] Around 4 or 5 a. m., June 21, plaintiff corraled eighty-four steers and between 7 and 7:30 a. m. he twice poured half of the Del-Tox in a fifty-gallon barrel, which had the top cut out, and sprayed the cattle from that, placing an electric pump in the barrel and spraying through a hose equipped with a garden nozzle as the cattle circled about him. He did not stir or mix the Del-Tox other than by water pressure. Plaintiff, anticipating that a cattle buyer would be coming to see his cattle, did not release the animals but opened a gate so that they had access to another corral—neither corral had drinking water for the cattle. It was a fairly warm day, plaintiff indicating that the temperature had probably reached seventy or eighty degrees. Returning about 5 p. m., plaintiff found one animal dead and others wobbly and dropping. He called a veterinarian, who after ascertaining the animals had been sprayed with Del-Tox came out. On clinical examination of the animals his diagnosis was organic phosphate poisoning, and he treated several with atropine.[2] The doctor said the cattle treated were ataxic, dyspneic, and cyanotic from anoxia. Six of the steers died during that evening and four others later.

According to the testimony adduced by plaintiff, some fifty of the remaining animals lost weight and suffered ill effects. The veterinarian who treated the steers conceded that he had performed no autopsies but said that an autopsy or blood testing for organic phosphate toxicity is not conclusive and that the symptoms of the steers were "pretty much what you see with organic phosphate toxicity alone." Another veterinarian subsequently saw the animals, including those that were dead, but performed no autopsies. His diagnosis, after being informed that they had been sprayed with Del-Tox, was toxemia from Del-Tox spray.

Records of the Cooper company indicated no other cattle losses from use of this particular batch of Del-Tox (generally the batch size ran from 3,700 to 4,500 gallons).

The trial court made the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

### "1.

"That on or about June 20, 1970, the Plaintiff purchased from Defendant, Shipton Supply Co., Inc., a half gallon bottle of Del Tox, a product manufactured by William Cooper and Nephews, Inc., and sold for, among other purposes, control of flies on cattle. That said Del Tox consists of organic phosphate chemicals which are toxic and are inherently dangerous to livestock.

---

1. Dr. Paul V. Christofferson, defendants' witness, testified:

"* * * if mixed properly, this product contains 0.15 percent active ingredient. Now, you can go quite a bit higher than that in cattle. * * * You have a three- to five-fold safety margin under normal conditions."

2. The Del-Tox container label stated: "Atropine is antidotal."

"2.

"That on June 22, 1970, the Plaintiff mixed the Del Tox with water in accordance with the directions contained on the bottle's label, and thereafter proceeded to spray approximately 84 steers owned by him.

"3.

"That within a short time after spraying the steers, a number of the cattle became ill and Plaintiff contacted a veterinarian, Dr. Ray Smith, who diagnosed the illness as caused by organic phosphate poisoning, the source of such organic phosphate being the contents of the Del Tox.

"4.

"Ten large steers died of organic phosphate poisoning and about fifty head of other steers became ill from the poisoning. Atrophine [sic], the antidotal prescribed by the Del Tox label, was used in the treatment of the cattle by Dr. Smith and the Plaintiff.

"5.

"That the label of Del Tox purchased by Plaintiff contained no instructions as to the quantity of Del Tox to be applied to cattle.

"6.

"That the market value of the ten steers lost was $2,430. That the remaining cattle afflicted with organic phosphate poisoning were ill for a period of time and did not have the normal and customary gain of similar steers to the Plaintiff's damage in the amount of $2,000. That in the care of such stock the Plaintiff incurred $105 in Veterinarian fees and costs of medicine. That Plaintiff also expended additional labor and care in attending the sick animals, the reasonable value of which labor was $565.00.

"7.

"That Defendant, Shipton Supply Co., Inc., purchased the bottle of Del Tox in the regular channels of commerce from Defendant, William Cooper and Nephews, Inc. and resold the Del Tox in the same container and condition as when received by it.

"CONCLUSIONS OF LAW

"1.

"That the Plaintiff purchased the Del Tox from Shipton Supply Co., Inc. and mixed the same in accordance with the directions on the label and properly sprayed his steers and was damaged in the loss and injury of his cattle by organic phosphate poisoning, the source of which was the contents of the Del Tox bottle in the total amount of $5,100.00, and that he should have Judgment for such amount from the Defendants.

"2.

"That the Defendants were negligent in the manufacture, labelling and instruction to users, and sale to users of a toxic organic phosphate chemical compound.

"3.

"That the Defendants breached their warranty to Plaintiff that the Del Tox manufactured and sold to him was fit for the purpose and use for which sold, namely spraying of cattle.

"4.

"That Defendant, William C. Cooper and Nephews, Inc., should indemnify Defendant, Shipton Supply Co., Inc., against any loss or claim arising out of Plaintiff's action."

At pretrial, it was the plaintiff's contention that the Del-Tox when mixed as directed on the bottle caused organic phosphate poisoning, resulting in the death and injury to his cattle, and that the sole issue of fact in the case was whether or not the cattle had suffered organic phosphate

poisoning. The trial court in its pretrial order stated, "It appears that the only issue here is one of fact to determine whether or not the Del-Tox caused the injuries complained of, and the amount of damages that the Plaintiff suffered, in event that he did."

These pretrial statements have caused this court considerable anxiety. We would have no hesitancy, were they to be accepted, in agreeing that plaintiff satisfactorily established that his cattle suffered organic phosphate poisoning and that the Del-Tox caused the injuries of which plaintiff complained. Viewing the evidence in the light most favorable to plaintiff, we can also accept the court's finding that the plaintiff mixed the Del-Tox in accordance with the directions contained on the label. Nevertheless, these matters standing alone would not establish a defective product nor injury proximately caused by defendants; and the contention of defendant-Cooper, adopted by incorporation in the pretrial order, recited that the burden was on plaintiff of proving the existence of a defect in the product.

Testimony was introduced by the Shipton company that the Cooper firm in connection with the United States Government had developed figures with regard to how much of the Del-Tox solution should be applied per animal, that "not more than two quarts per animal reside on the animal when it is sprayed," and that consequently two quarts of solution would be required to spray an animal. Possibly, this evidence was the basis for the court's finding (5) that the "label of Del Tox" purchased by plaintiff contained no instructions as to the quantity of Del-Tox to be applied to cattle, and its consequent conclusion (2) that the defendants were negligent in labelling. If so, we do not consider the conclusion to have been supported since there was no evidence that spraying an animal with more than two quarts of solution would be detrimental to it.

Plaintiff insists that under factual situations similar to those here courts have ruled the doctrine of res ipsa loquitur applicable and argues it applies in the present case because (1) the poisoning of the cattle would not ordinarily occur in the absence of negligence, (2) the product was received by Bumbaca in a sealed container so it was under the exclusive control of the defendant, (3) the Del-Tox was administered according to the directions on the label, and (4) since this particular bottle of Del-Tox was completely used, the plaintiff had no opportunity to prove it defective. Even were we to assume, arguendo, that the res ipsa doctrine could be applicable, we question plaintiff's third enumeration, that the Del-Tox was administered according to the directions on the label. Perhaps this is merely another way of saying, as the court found, that the Del-Tox was *mixed* in accordance with the directions, but this alone does not establish a defective product nor injury proximately caused by defendants.

█ Although absent scientific analysis of the defect the defectiveness of a product may be proved by circumstantial evidence, such evidence in this case was insufficient. Circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754, 757;[3] Ross v. Great Northern Railway Company, 9 Cir., 315 F.2d 51, 58 (certiorari denied 375 U.S. 823, 84 S.Ct. 64, 11 L. Ed.2d 57); see Colorado Serum Company v. Arp, Wyo., 504 P.2d 801, 806; Prosser, Torts, p. 241 (4 ed.). Here the Cooper firm specifically and clearly instructed that animals not drink from run-off pools (see the third paragraph of "Directions" in the Appendix). This aspect was ignored by plaintiff in the presentation of his evidence at the trial level and bypassed in the ap-

---

3. Plaintiff cites Weber v. Fidelity and Casualty Company of New York, La.App., 236 So.2d 616 (reversed 250 So.2d 754), for the principle that a manufacturer has a duty to warn and specifically instruct the user as to the safe usage of a product of this type.

peal by the mere statement that "No evidence exists as to any 'pools' or 'puddles' of the mixture from which the cattle could drink." The burden was on plaintiff, and his failure to meet it was crucial. Accordingly, we must agree with defendants' contention that he failed to show his injury was proximately caused by defendants.

Reversed.

## APPENDIX

NET C 'TLNTS
HALF LLON

### Makes 100 GALLONS of Spray or Dip

**No Waiting Period Between Last Application and Slaughter**

## PROTECTS AGAINST REINFESTATION

**WARNING**

Keep out of reach of children. See other warnings on back panel.

U.S.D.A. reg. No. 59-128

**ACTIVE INGREDIENTS:**
Dioxathion (2,3-p-dioxanedithiol S,S bis (O,O-diethyl phosphorodithioate)) ............... 21%
Related Compounds ............................ 9%
Methylated Naphthalenes ........................ 60%
**INERT INGREDIENTS:** ............................... 10%
100%

® Registered Trade Mark, Hercules Powder Company    U.S. Patent No. 2,725,328

## DIRECTIONS FOR USE
### ON CATTLE, SHEEP, GOATS, SWINE AND HORSES
To Kill Hornflies, Lice, Ticks, Keds (Sheep Ticks) and Wool Maggots

**SPRAY OR DIP:** Mix at the rate of 1 quart DEL-TOX in 50 gallons of water. Mix thoroughly. Spray or dip as required but no more often than every two weeks. The use of DEL-TOX requires no waiting period between last application and slaughter.

**RESIDUAL PROTECTION:** DEL-TOX provides long-lasting protection against reinfestation against ticks, 3 weeks against hornflies and a single treatment is usually sufficient for lice and keds. For biting lice on goats, a second application after 21 days may be required for complete cleanup. DEL-TOX is valuable in providing up to two months protection for sheep and goats against wool maggots.

**SPRAYING:** Make sure spray is thoroughly mixed before application. Spray to thoroughly wet animals for best results. Do not allow animals to drink from run-off pools.

**DIPPING:** Thoroughly mix dip before dipping. Water animals before dipping to prevent drinking of dip wash. In routine dipping, if it is necessary to treat animals under the age of 3 months, spraying is recommended. In quarantine dipping, for fever tick control, when animals of all ages must be dipped, individual hand immersion of young animals is essential to avoid swallowing of dip wash.

**REPLENISHMENT:** Add 1 quart of DEL-TOX to each 50 gallons fresh water added to dipping vat or control replenishment by vatside test.

**BACK RUBBERS:** As an aid in the control of hornflies and lice on beef cattle dilute Del-Tox at the rate of 1 qt. to 5 gals. of diesel fuel or light motor oil. Charge rubbing device as required. Do not spray animals with this oil solution.

**POUR-ON:** To control hornflies on beef cattle dilute 1 qt. of Del-Tox with 10 gals. of water and apply 1 qt. of solution along the back line of each animal. Do not re-treat more often than every 30 days.

**USE OF DEL-TOX AS A PREMISE SPRAY TO CONTROL FLEAS & TICKS:** To control fleas and ticks in outdoor areas such as kennels and lawns, dilute DEL-TOX at the rate of 1 quart in 15 gallons of water (for smaller quantities use 4 tablespoons DEL-TOX per 1 gallon water). Thoroughly spray areas where dogs frequent and sleep. On lawns and other open areas apply 1 gallon of dilute mixture per 1000 square feet with sprinkling can or sprayer. Repeat application as required.

DO NOT TREAT PETS OR ANIMALS WITH THIS CONCENTRATION. PAY STRICT ATTENTION TO WARNING STATEMENTS ON THE DEL-TOX CONTAINER.

**WARNING:** Do not use on dairy animals or in dairy barns. Do not dip or spray foals. Do not apply to dairy goats. DEL-TOX Concentrate is toxic and may be fatal if swallowed or absorbed through the skin. Do not use concentrations greater than those recommended. Do not inhale spray, get in eyes, on skin or clothing. Use respirator or goggles if necessary. Wash with soap and water in case of accidental contact. Do not contaminate feed or foodstuffs.

**POISON-ANTIDOTE:** Call physician immediately in case of accidental poisoning. If swallowed induce vomiting with warm water. If on skin, remove clothing and wash immediately with soap and water. Atropine is antidotal.

**WARRANTY**

The manufacturer warrants this product to kill pests named on this label if used as directed or it will refund purchase price upon delivery of container and unused contents to dealer. No other warranty is made either expressed or implied.

| Amount Del-Tox | Volume of Water Spray or Dip | Volume of Oil Back Rubber use only |
|---|---|---|
| 8 Oz. | 12 Gal. | 1 Gal. and 3 Qts. |
| 1 Pt. | 25 Gal. | 2½ Gal. |
| 1 Qt. | 50 Gal. | 5 Gal. |
| 2 Qt. | 100 Gal. | 10 Gal. |

MANUFACTURED BY WILLIAM COOPER & NEPHEWS, INC., CHICAGO, ILL. 60614, U S A

[A8023]