**COLORADO SERUM COMPANY, a Colorado Corporation, Appellant (Defendant below),**

**Pine Bluffs Drug Company, a Wyoming Corporation, O. M. Franklin Serum Company, a Colorado Corporation (Defendants below),**

**v.**

**Grant F. ARP and Darlene Arp, Appellees (Plaintiffs below).**

**No. 4098.**

Supreme Court of Wyoming.

Dec. 22, 1972.

Guy, Williams, White & Mulvaney and A. Joseph Williams, Cheyenne, for appellant.

Hanes, Carmichael, Johnson, Gage & Speight, T. A. Fennell, and David H. Carmichael, Cheyenne, for appellees.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Mr. and Mrs. Grant Arp, operators of a hog ranch, on August 3, 1966, purchased hog cholera vaccine (porcine blood origin —crystal violet inactivated virus) and vaccinated seventy weaner pigs, some of which became sick with suspected cholera. Eventually plaintiffs' entire herd was destroyed by state and federal officials pursuant to the cholera eradication program. The vaccine was purchased from the Pine Bluffs Drug Company, distributed by O. M. Franklin Serum Company, and manufactured by Colorado Serum Company, all three of which were sued by the Arps, the latter company assuming the entire defense with the understanding that it would satisfy any resulting judgment.

Trial of the cause to the court without a jury resulted in a judgment for plaintiffs in the sum of $21,779. The defendant-appellant, hereinafter referred to as defendant, has appealed, urging (1) plaintiffs had the burden of proving the vaccine defective and failed to carry it; (2) there was error in the court's admitting into evidence over objection the report of Dr. Noah and permitting Dr. Duncan to testify in connection therewith; (3) there was error in the court's admitting into evidence over

objection Plaintiffs' Exhibit 1, a progress report in the hog cholera eradication program, and permitting Dr. Duncan to testify concerning it; (4) the court erred in permitting Dr. Sanders to testify as an expert; and (5) if the improper evidence be eliminated, the judgment is not supported by substantial evidence.

Plaintiffs respond that the challenged evidence was properly admitted and the burden of proof met albeit largely by circumstantial evidence. Additionally they present argument and insist that the court make pronouncements regarding the applicability of implied and express warranties under the Uniform Commercial Code vis-a-vis negligence of defendant.

The facts are not really disputed and the chronology of the events which we deem relevant to the litigation may be outlined as follows:

On August 3, 1966, plaintiffs bought three bottles of cholera serum manufactured by defendant (one containing twenty doses of Serial 608; one containing fifty doses of Serial 609, and one three-dose bottle of an unknown serial). Three days later the pigs were vaccinated from the first two mentioned bottles, plaintiffs throwing the empty containers in the trash can.[1] They used no serum from the three-dose bottle. On August 11 they noticed one of the vaccinated pigs was sick. On the 18th they had a Nebraska veterinarian examine the animals. He gave them some medication and a half dozen collapsed. Further treatment was immediately administered but three died. The veterinarian autopsied the dead pigs, taking specimens from one, and indicating to Arp the specimens would be sent to the federally operated animal disease laboratory at Ames, Iowa.

The rest of the vaccinated pigs deteriorated rapidly from that point on and during the next ten days sows in the farrowing house and pens next to the weaner pigs became ill. On the 29th Arp took two pigs

to veterinarians in Laramie, one of which died en route. According to Arp, specimens were taken and sent to Ames for analysis. On August 30 Arp burned the remains of all the dead pigs and on the same day the Wyoming State Veterinarian and federal veterinarians went to the Arp place and quarantine signs were posted. On the 31st veterinarians autopsied pigs at the Arps. A federal veterinarian stationed at Riverton, Dr. Noah, reported that diagnosis of hog cholera in the Arp swine herd was confirmed on September 1. Dr. Noah had begun his investigation August 30 and completed it September 6, stating in his report:

"* * * A Positive FA test was received on September 1st. All signs point to a vaccination break from Crystal Violet vaccine. None of the conditions that are usually connected with the introduction of Cholera into a herd were to be found in this case. * * *"

On September 2 and 3 state and federal veterinarians proceeded to depopulate the Arp swine herd under the cholera eradication program; the remains of all the animals were burned (eighteen of the pigs had died prior to the destruction of the herd).

At limen of consideration, the question of whether or not the plaintiffs' hogs had cholera should be disposed of. The defendant does not directly challenge this but seems to do so indirectly, especially by the remark in its brief that it now states "categorically * * * the record contains no admissible evidence that Ames either diagnosed the tissues, or found cholera in them, or reported that it had done so." In that regard, we are impressed by and accept the determination of the trial court in its prejudgment letter, which seems to be borne out by the record:

"* * * in the Defendant's pre-trial memo, Defendants in outlining the facts of the case, represented to the court that 'cholera developed in some of the hogs

---

1. Some time later at the suggestion of veterinarians, the containers were recovered.

and the entire herd was destroyed under the Federal and State program for the eradication of hog cholera.' The general tenor of Defendants' pre-trial memo goes along on the basis that Plaintiffs' herd did have cholera. However, at the pretrial conference in accordance with the Plaintiffs' request to the Defendants that they specifically stipulate that the Plaintiffs' herd had cholera, the Defendants became hesitant and so the Court directed in its pre-trial report and order that at least 30 days before trial, the Plaintiffs be notified whether or not they would admit that the hogs had cholera. No notice was given to Plaintiffs within the time required by the Court."

The letter continued with other reasons for the court's determination that plaintiffs' swine had contracted cholera; and under the mentioned circumstances, the defendant will not now be heard to argue or imply that the plaintiffs' swine may not have had cholera.

Apart from this aspect, the questions of plaintiffs' having met their burden of proof and of the judgment's being supported by substantial evidence are so closely related that logically they must to a certain extent be discussed together and neither can be resolved until there be a determination about the propriety of the trial court's admitting certain challenged evidence.

It is first urged that the report of Dr. Noah was improperly admitted and that his supervisor, Dr. Duncan, a federal veterinarian working for the Animal Health Division in charge of the State of Wyoming,

was permitted to testify in connection with the report. We hold the challenge to be without force.

■ After a foundation had been laid, the court admitted the report under the Uniform Business Records as Evidence Act (§§ 1–170—1–173, W.S.1957), which ruling would seem to have been correct. See In re Estate of Morton, Wyo., 428 P. 2d 725, 731; 32 C.J.S. Evidence § 730(2), p. 1052.[2] Defendant cites In re Shreve, Wyo., 432 P.2d 271, as support for its position; but it will be noted that there the court was discussing only §§ 1–165—1–169, W.S.1957, and not those under which admission of the evidence in this instance was made. Dr. Duncan testified that when there is a hog cholera outbreak it is programmed procedure for such a report to be made out for the records, a copy being kept in his office, in the office of the state veterinarian, and in the Washington office. We see no error in the admission of the exhibit or in Dr. Duncan's being permitted to testify in connection with the report, it being within the trial court's discretion.

■ Passing to the contention that Plaintiffs' Exhibit 1, "ARS 91–59, February 1967, Cooperative State-Federal Hog Cholera Eradication Program, Progress Report 1966, U.S. Department of Agriculture, Agricultural Research Service," [3] was improperly admitted and that Dr. Duncan was permitted to testify regarding it, we find the charge of error to be unsupported by either relevant precedent or cogent argument. Nichols v. Pangarova, Wyo., 443 P.2d 756, 763. Moreover, the trial of the

2. Although §§ 1–170—1–173 are not identical to the Federal Business Records Act, we consider pertinent the statement of Mr. Justice Hand in United States v. Grayson, 2 Cir., 166 F.2d 863, 869: " * * * In cases where an entrant records what he has heard, the document will be evidence of what * * * [others] have told him only in case it appears that it was part of their regular course of business to report to him what the declarants themselves knew, as it was part of his business to record what they said. * * * The 'act,

transaction, occurrence or event' which the entrant records must be one of which either he has knowledge, or which he learns from a declarant who shall 'in the course of the business transmit the information for inclusion in the memorandum.' * * * "

3. This report stated it had been prepared in the "Animal Health Division, Agricultural Research Service, United States Department of Agriculture, Hyattsville, Maryland 20782."

cause to the court rather than a jury in this instance would tend to minimize any error. We note also in passing that the modern tendency of courts is to admit in evidence any matter which throws light on the question in controversy, leaving to the trial court's discretion the problem of keeping hearings within reasonable bounds. United States v. 25.406 Acres of Land, etc., in Arlington County, 4 Cir., 172 F.2d 990, 993, certiorari denied 337 U.S. 931, 69 S.Ct. 1496, 93 L.Ed. 1738. This principle was discussed and enlarged in Dallas County v. Commercial Union Assurance Company, 5 Cir., 286 F.2d 388, 397, and adopted in Banko v. Continental Motors Corporation, 4 Cir., 373 F.2d 314, 316, a case in which damages were sustained in an airplane accident and F.A.A. records had been introduced revealing there had been no other accidents of similar cause.

Accordingly, we are unpersuaded that there was error in admission of the document; but in any event, there is no showing of prejudice. In that regard, defendant emphasizes page seven of the exhibit as being the most objectionable for showing that in the year plaintiffs vaccinated more outbreaks were caused by vaccinations than by any other cause and page nineteen, which showed an outbreak in Wyoming. There is, however a failure to note that the tenor of the last portion of the report is a recommendation for a conversion to inactivated vaccines—the type manufactured by defendant. This in itself would seem to benefit the defendant, assuming the trial court gave the report any weight.

A similar rationale would apply to claimed error concerning Dr. Duncan's testimony about the report. We are unconvinced that adverse effects were suffered by the defendant on this account. The doctor did not purport to have direct knowledge concerning the matters in the report, and it was established, with reference to page seven of the exhibit, he did not know if inactivated live virus vaccines had caused cholera.

 Defendant argues that Dr. Sanders was not qualified as an expert and especially objected to a hypothetical question which the court permitted him to answer. We have in previous cases made it clear that such matters rest largely in the discretion of the trial court, Logan v. Pacific Intermountain Express Company, Wyo., 400 P.2d 488, 493; and in this situation we find no abuse of discretion. Counsel correctly says that the testimony of a witness is no stronger than is shown by his cross-examination, citing Smith v. Beard, 56 Wyo. 375, 110 P.2d 260, 272. However, the application of such a rule here would not affect the admissibility of Sanders' testimony but merely its weight, which matter was one for the trial court to have considered along with all of the other evidence in this case.

 In view of our holdings regarding the foregoing claims of error, the merits of this appeal must be resolved solely on the substantiality of the evidence to support the judgment. We agree with defendant in its statement in the brief that plaintiffs tried their case on the theory of breached express and implied warranties; and we think they were entitled to elect so to do under §§ 34–2–313 and 34–2–318, W. S.1957, 1971 Cum.Supp.[4] Perhaps the pivotal argument of defendants in the appeal is that plaintiffs in order to prevail must show first that there was a defective product, second how it was defective, and third, that the defendant was responsible for the defect under Wyoming law. In so arguing counsel is insistent that the absence of the allegedly defective product does not excuse the necessity of proving the defect and its nature. True, the three above-mentioned factors must be proved; but there would seem to be no requirement that the allegedly defective product must be presented in evidence and be shown by analysis to be

---

4. Comprehensive discussion of the Uniform Commercial Code vis-a-vis tort recovery in products liability is contained in 22 (Pt. II) Stanford L.Rev. 713.

ipso facto defective. Such proof is permissible by circumstantial evidence.

■ Defendant's reliance on Continental Motors Corporation v. Joly, Wyo., 483 P.2d 244, 248, as support for the contention that the allegedly defective vaccine must be produced and shown by testing to be defective is misplaced. In Joly this court indicated, 483 P.2d at 249, that no evidence had been adduced which was not in the nature of unacceptable speculation and possibilities or probabilities, which were insufficient. Here the trial court in its letter to counsel perceptively observed:

"* * * Though there was lengthy, detailed and extremely technical testimony on both sides with respect to the vaccine, an over-all view of all the evidence points reasonably to the outbreak [of cholera in plaintiffs' herd] as coming following the vaccination of the pigs and induced by the vaccine. No other explanation reasonably focuses upon any other cause. The Court concludes that Plaintiffs established the proximate cause of the cholera in Plaintiffs' herd as having its source in the vaccine manufactured by the Defendant Colorado Serum Company. There was considerable dispute between the experts as to whether the symptoms of cholera would show five days after vaccination. The Court notes with interest, Defendants Deposition Exhibit No. 3, attached to the Deposition of Dr. T. W. Tamoglia that when well unvaccinated control pigs are injected with live hog-cholera virus, it is expected that at least three of them manifest grave symptoms of acute hog cholera, 'subsequent to the third day and within 7 days after challenge.' This not only substantiates the presence of cholera in the Arp swine but condemns the vaccine, as well; it contained live virus, which it should not."

As to the sufficiency of circumstantial evidence in a case of this nature, we call attention to the case of Tinnerholm v. Parke Davis & Co., S.D.N.Y., 285 F.Supp. 432, 440, where the court concluded that vaccine which had been administered to a child was the cause of high fever and resultant injury. Numerous cases allow similar proof by circumstantial evidence. Carter Farms Company v. Hoffman-Laroche, Inc., 83 N.M. 383, 492 P.2d 1000, 1002; Crystal Coca-Cola Bottling Co. v. Cathey, 83 Ariz. 163, 317 P.2d 1094, 1100. It is also to be noted that plaintiffs adduced proof eliminating alternate causes of cholera in their herd. See 38 Tenn.L.Rev. 325, 336.

In the present litigation although the evidence was circumstantial, it was sufficient to justify the court's holding that:

"The preponderance of evidence proves that one or both of the bottles of Colorado Serum Company's Hog Cholera Vaccine which Plaintiffs purchased on August 3, 1966, was defective as a result of manufacture in that one or both of the bottles contained live Hog Cholera Virus; that the defect in the product constituted a breach of Defendant's implied warranty of merchantability, implied warranty of fitness for a particular purpose, and its express warranty that the product was incapable of inducing disease; and * * * was the direct and proximate cause of the Plaintiffs' loss of their swine herd and of their subsequent damage."

Affirmed.