SETH, Chief Judge.
This is a products liability case on appeal from a judgment after trial without a jury in which the defendant-appellee, American Home Products Corporation, a manufacturer of an animal vaccine called Anaplaz, was held liable to plaintiffs-appellants, William and Maxine Haste. The plaintiffs appeal an award of $49,997.00 as inadequate damages. The defendant-cross-appellant maintains that no substantial evidence of causation was presented, and improper standards were applied in determining liability.
Mr. and Mrs. Haste are experienced cattle ranchers in Park County, Wyoming, in the business of breeding cattle. It was their intention to upgrade their herd by eventually producing a purebred, top quality herd of Santa Gertrudis cattle. In an effort to so upgrade the herd, they purchased a number of cattle which they later found to have a disease called anaplasmosis.
The defendant is a manufacturer of the vaccine Anaplaz. It was through the defendant’s advertising that the plaintiffs first learned of Anaplaz as a possible means to control anaplasmosis. As a result of the loss of a number of cattle from anaplasmo-sis, the plaintiffs discussed the use of Ana-plaz with their veterinarians as a means to prevent any further outbreaks of the disease. The interest in Anaplaz was prompted, according to Mr. Haste’s testimony, because it had been advertised in livestock magazines as the only safe and economic measure available to assist a rancher in preventing anaplasmosis. The advertising campaign for Anaplaz was both extensive and self-laudatory.
In 1970, American Home Products was aware of possible side effects the use of Anaplaz might have on newborn calves. A release by the United States Department of Agriculture on December 29, 1969, makes clear that there was at least some uncertainty as to the hazardous nature of Ana-plaz. It said in part: “Vaccinating brood cows with anaplasmosis vaccine sometimes may cause fatal side effect in calves.”
The dispute arises over the asserted duty of defendant to reasonably inform the public of the possibly dangerous side effects the administration of Anaplaz might have on cattle. The evidence shows instances where package inserts for Anaplaz were amended to include a warning of a possibility of neonatal isoerythrolysis (NI) in calves through the use of Anaplaz, and a notice that it could be used only on order of a licensed veterinarian. Letters were also sent to veterinarians in effect informing them of the risk of NI. The advertising-material, however, did not notify the ultimate purchaser of any risk. In fact, certain advertisements made the following statements:
“Vaccination with Anaplaz has met trial by fire in five years of field use . with a coordinated effort, a successful breakthrough was finally made, resulting in a safe, practical and effective vaccine . five years of Anaplaz field use has shown there’s no longer any reason for running the risks of suffering the ravages of anaplasmosis.”
Defendant points out that there was at least one instance of NI in plaintiffs’ cattle which had not been vaccinated with Ana-plaz. The trial court, however, found that thirty-one calves were lost as a proximate result of the Anaplaz vaccination. Damages were also awarded for the diminution in value of 151 brood cows. Plaintiffs-appellants request this court to order either additur, or remand to the trial court to redetermine the amount of damages as to the remainder of the unaccounted-for brood cows. They also argue that damages for-the upgrading program should not have been excluded because evidence was presented that except for the incidence of NI, plaintiffs would have been capable of producing a herd of purebred Santa Gertru-dis cattle suitable for sale as breeders.
*1124 The trial judge based his conclusions as to liability on the degree to which defendant misrepresented, in ads directed to cattle ranchers, its knowledge of the hazardous side effects the vaccine might have on newborn calves. As pointed out by the trial court, in Maxted v. Pacific Car & Foundry Co., 527 P.2d 832 (Wyo.), the Wyoming Supreme Court refused to apply strict liability in a products liability case. Bruce v. Martin-Marietta Corp., 544 F.2d 442 (10th Cir.); Colorado Serum Co. v. Arp, 504 P.2d 801 (Wyo.).
The basic question on appeal is the extent and nature of the required warning to be given by defendant. The trial judge acknowledged that the drug was a “prescription drug.” The Anaplaz vaccine was only available from veterinarians, and plaintiffs obtained the dosages here concerned from their veterinarians. In this aspect of the case, it makes no difference whether the drug was compounded by the defendant or by a pharmacist. Since it is a prescription drug, the doctrines applicable thereto must be applied, and the trial court was in error in not so doing.
The record establishes that the maker of the vaccine had warned the veterinarians of the NI danger by what are referred to as “Dear Doctor” letters. The veterinarians apparently were also aware of such possible side effects from other sources. The containers for the vaccine had a clear warning in red to read the circular enclosed in the package. This warning on the outside said in part: “Do not use until insert leaflet has been read, understood and explained to the owner.” This enclosed leaflet, in turn, stated clearly that it had been reported that the use of Anaplaz may be associated with the occurrence of NI. It also said, “Field Evidence suggests the vaccination of brood cows with Anaplaz can be a calculated risk and the protective benefits of vaccination should be weighed against the possible risk of neonatal isoerythrolysis.”
The warnings to the veterinarians by the defendant were established, and were adequate under the prescription drug doctrines.
The trial court in its memorandum said:
“With their cattle having anaplasmosis, and having become interested in Anaplaz through defendant’s advertising, in the spring of 1971, plaintiffs consulted Dr. Virgil Humphreys, a veterinarian in Wor-land, Wyoming, and they asked him about Anaplaz.”
Dr. Humphreys, according to the trial court’s memorandum, gave minimal warnings as to the risks, and recommended the use of Anaplaz. He told plaintiffs that he had used it on his own livestock. The plaintiffs did not buy any vaccine then. They testified, however, that they relied on the advice of Dr. Humphreys.
Some time later, in October of 1971, plaintiffs went to the veterinarian, Dr. Roberts, another of their “regular” veterinarians. They apparently talked with him some two hours. He did not recommend the use of Anaplaz. They visited him a second time. The trial judge found no adequate warning by Dr. Roberts directly relating to NI. Dr. Roberts, according to plaintiffs’ brief, “ . . . testified for the Defendant and he indicated that he would not recommend Anaplaz because of the danger of N.I. caused by the vaccine.” Apparently on the second visit to Dr. Roberts, they told him in substance that they would rely on Dr. Humphreys’ “faith in the vaccine,” and wanted it. Mrs. Haste testified that Dr. Roberts had said that if it were “he,” he would not use the vaccine. Mr. Haste testified he had read the leaflet in the box of vaccine and understood it. This was the vaccine they had Dr. Roberts order for them apparently on their second visit with him.
The plaintiffs also went to a third veterinarian, Dr. Lester, and purchased from him booster shots in January of 1973.
The trial judge considered and evaluated the warnings given plaintiffs by the veterinarians, and found them minimal. However, the record shows that the veterinarians were well aware of the risks. They had adequate advice as to the risks from the defendant. These were the “warnings” *1125 which are the significant ones for prescription drugs, and thus controlling here. There were no fact questions as to these warnings.
The trial court was in error in holding that the contents of the advertisements of Anaplaz in the various livestock publications are controlling on the warning issue, and thus override the practical considerations which arise from the requirement that the consumer purchase the vaccine only from veterinarians, and override the established “prescription drug” doctrines.
The record shows the typical “prescription drug” sequence of events: The Hastes had livestock exposed to anaplasmosis from new stock they had brought into the herd; they became interested in Anaplaz from the ads in the livestock magazines; they consulted their “regular” veterinarians (two of them) before making a decision as to what to do; they received typical medical advice; they balanced the risks; they decided to have the Anaplaz ordered by Dr. Roberts (a veterinarian was the only source); they received it from him; they read and understood the leaflets, and used it. Their veterinarians were knowledgeable on the problem, and were well advised by defendant as to the risks. In this chain or sequence of events, the defendant discharged its duty to plaintiffs by the warnings to the veterinarians.
The oral polio vaccine cases against Wyeth, Reyes v. Wyeth Laboratories, 498 F.2d 1264 (5th Cir.), and Davis v. Wyeth Laboratories, Inc., 399 F.2d 121 (9th Cir.), are not contrary to the conclusion here reached. They concern prescription drugs where a warning to the doctor is usually sufficient, but they also concern situations where the drug was administered to large groups, and the individual had no contact with a doctor whatever. There the courts held in substance that the warning on the label must be sufficient to discharge the maker’s duty. Instead this situation is determined by such eases as Johnston v. Upjohn Co., 442 S.W.2d 93 (Mo.App.); Stevens v. Parke, Davis & Co., 9 Cal.3d 51, 107 Cal.Rptr. 45, 507 P.2d 653 (Cal.), and Mulder v. Parke Davis & Co., 288 Minn. 332, 181 N.W.2d 882. We have instead of the polio cases a direct “patient” doctor consultation and advice as to a prescription drug.
The judgment appealed from by defendant must be, and is, set aside with directions to enter judgment for defendant.