0124

Laura E. COLEMAN, Administratrix of the Estate of Jacob S. Coleman, Appellant, v. Jack SHAW, d/b/a Town "n" Country Lodge, Respondent.

(314 S. E. (2d) 154)

Court of Appeals

*James B. Carraway* and *Kenneth M. Suggs*, of *Suggs & Kelly*, Columbia, and *Price and Poag*, Greenville, *for appellant.*

*Theron G. Cochran* of *Love, Thornton, Arnold & Thomason*, Greenville, *for respondent.*

March 12, 1984.

SANDERS, Chief Judge:

Appellant Laura Coleman sued respondent Jack Shaw, owner of Town "n" Country Lodge, for the wrongful death of her husband, Jacob Coleman. The trial court ordered summary judgment in favor of Shaw. We reverse and remand.

Jacob Coleman, his wife, son and niece were registered guests at the Lodge, a motel in Myrtle Beach, South Carolina. On the morning of his death, Mr. Coleman, age 29, and the two children left their second floor room to go for a swim in the motel pool. According to testimony by the niece, Mr. Coleman swam for a period of time, stood up near the pool's dividing rope in waist-high water, appeared to regurgitate, and fell

down into the water. He then floated to the surface and toward the deep end of the pool. The niece thought something was wrong and ran to get her aunt who was sleeping in their room.

Mrs. Coleman testified she looked out her window and saw their son leaning over the pool's edge, pulled on her housecoat, and ran to the pool. When she got there, she saw her husband at the bottom in a crouched position on his side. Because Mrs. Coleman did not know how to swim well in deep water, she asked a lady standing nearby if she could swim. When told the lady could not, Mrs. Coleman ran to the motel front desk and asked the employee there for help. In response, he asked what her husband was doing in the pool alone. When Mrs. Coleman received no assistance, she went into the coffee shop and began asking people there if they could swim. One of the men present volunteered and dived into the pool, capped Mr. Coleman's mouth with his hands, but saw no air bubbles. He then decided Mr. Coleman was dead and returned to the coffee shop to tell Mrs. Coleman. She continued to ask that her husband be removed from the pool, and attempted to do so herself, but was held back and told she was in shock and it was too late. Only then did the motel employee, who was still behind the front desk, telephone a rescue squad. Rescue workers arrived approximately 20 to 30 minutes later but made no attempt to revive Mr. Coleman.

According to Mrs. Coleman, she requested an autopsy but one was never performed. Further testimony indicates Mr. Coleman had no major health problems, did not appear ill the morning of his death, and had not eaten breakfast before his swim.

At the time of this accident, South Carlina Department of Health and Environmental Control Regulation 61-51(B)(10) required:

> Safety Precautions: ... No swimming pool shall allow solo bathing. At least one employee, having had first aid training, shall be on hand at all times. A stretcher, two woolen blankets, and other emergency equipment shall be provided. There should be a telephone available with a list of emergency telephone numbers.

Public Health Reason. These precautions will minimize chances of accident and provide emergency equipment when needed.[1]

There was apparently no such first aid trained employee on hand. Certainly no emergency equipment was provided.

Mrs. Coleman contends violation of this regulation constitutes negligence *per se*, from which the proximate cause of her husband's death can be reasonably inferred. Shaw denies that he was negligent and argues a total lack of evidence as to proximate cause. He asserts it is mere speculation that Mr. Coleman would have survived had there been no violation of the regulation. Shaw further argues that Coleman may have died from some cause other that drowning.

Our Supreme Court has held generally that an action in negligence requires the plaintiff to show both that the defendant was negligent and such negligence was the proximate cause of the plaintiff's injury. *Sherrill v. Southern Bell Telephone & Telegraph Company*, 260 S. C. 494, 197 S. E. (2d) 283 (1973). Violation of a statute is negligence *per se*. *Cantrell v. Carruth*, 250 S. C. 415, 158 S. E. (2d) 208 (1967). Code section 44-1-150 (1976, as amended) provides a penalty for the violation of the cited regulation. This regulation was obviously designed to protect pool users from the kind of injury which occurred here. No serious question is presented as to there being evidence Shaw violated this regulation. We hold violation of this regulation was negligence *per se* and proceed to the more difficult question of proximate cause.

In determining a motion for summary judgment, all evidence and inferences which can be drawn therefrom should be viewed in the light most favorable to the party resisting the motion. *Tom Jenkins Realty, Inc. v. Hilton*, 278 S. C. 624, 300 S. E. (2d) 594 (1983). The motion should only

---

[1] Amendments to Regulation 61-51, effective June 24, 1983, recommend that all pools provide lifeguard protection when at all practical to better ensure the safety of patrons. The amendments also require at least one employee having had first aid training to be in the pool area during operating hours, within a two-minute response to a call. In addition, the required lifesaving and emergency equipment must now be within 25 feet of the pool, inside the fence. *See* Regulation 61-51(C)(8) Code Vol. 24A (Supp. 1983).

However, these amendments were not in effect on July 24, 1979, the date of the accident here.

be granted if there is no genuine issue as to any material fact, and inquiry into the facts is not desired. This is true even if there is only a dispute as to conclusions to be drawn from evidentiary facts. *Hodges v. State Farm Mutual Automobile Insurance Company,* 278 S. C. 224, 294 S. E. (2d) 47 (1982). Whether the violation of a statute is the proximate cause of an injury is ordinarily a jury issue and thus inappropriate for disposition by summary judgment. *Cantrell.*

Predictably, the question of proximate cause arises often in drowning cases. In *Haft v. Lone Palm Hotel,* 3 Cal. (3d) 756, 91 Cal. Rptr. 745, 478 P. (2d) 465 (1970), the Supreme Court of California dealt directly with the issue. The bodies of Mr. Haft and his son were found submerged in a hotel swimming pool. There was no direct evidence regarding the manner of the drownings. The court held that violation of a statute requiring the hotel to provide a lifeguard was negligence *per se.* On the issue of proximate cause, the court held further that the defendant's negligence "not only stripped decedents of a significant degree of protection to which they were entitled, but also deprived the present plaintiffs of a means of definitively establishing the facts leading to the drownings." The court went on to hold: "To require plaintiffs to establish 'proximate causation' to a greater certainty than they have in the instant case, would permit defendants to gain the advantage of the lack of proof inherent in the lifeguardless situation which they have created." Finally the court held: "Under these circumstances the burden of proof on the issue of causation should be shifted to defendants to absolve themselves if they can."

Our Supreme Court has reached a similar result without saying that the burden of proof shifts to a defendant. *Brock v. Carolina Scenic Stages and Carolina Cas. Co. of Burlington,* 219 S. C. 360, 65 S. E. (2d) 468 (1951), involved a head on collision between a bus and a pick-up truck. Both the driver and only passenger in the truck were killed. Suits against the bus company were brought by the administratrix of the passenger's estate. No eye witnesses testified and there was no direct evidence of negligence by the bus driver. The court held it could be inferred from the evidence that either the bus or the truck, or possibly both, was being driven left of the center of the highway. The trial court ordered nonsuit for the bus

company. The Supreme Court reversed, holding that "while the difficulty of proof does not relieve plaintiff of the burden of proof, yet in a situation like this, the Court should take a very liberal view of the testimony." The court then quoted the case of *Herbert v. W. H. Smith Paper Corporation*, 243 App. Div. 260, 276 N.Y.S. 820 (1935), and held that "in circumstances such as these only slight evidence is required to shift to the defendant the burden of explanation."[2]

Other courts have come close to shifting the burden without actually saying so. For example, the United States Court of Appeals considered the issue of proximate cause in *Gardner v. National Bulk Carriers, Inc.*, 310 F. (2d) 284 (4th Cir. 1962), *cert. denied*, 372 U. S. 913, 83 S. Ct. 728, 9 L. Ed. (2d) 721 and *Hicks v. United States*, 368 F. (2d) 626 at 632 (4th Cir. 1966). In *Gardner*, a seaman went overboard. The evidence indicated he might have survived, depending on how long he had been in the water before being rescued. The ship's master refused to reverse course to search for the seaman. On the issue of proximate cause, the court held "the duty (to attempt rescue) is of such nature that its omission will contribute to cause the seaman's death. . . . [C]ausation is proved if the master's omission destroys the reasonable *possibility* of rescue." (Emphasis added.)

*Hicks* was a medical malpractice case for death due to an alleged misdiagnosis. The trial judge ruled the plaintiff had failed to prove the misdiagnosis was the proximate cause of the victim's death. The Court of Appeals reversed, holding, "If there was any substantial *possibility* of survival and the defendant has destroyed it, he is answerable." (Emphasis added.)

Most courts have found some basis for holding the question of proximate cause is a jury issue where necessary to avoid a

---

[2] *See also, Shepherd v. United States Fidelity & Guaranty Company*, 233 S. C. 536, 106 S. E. (2d) 381 (1958) where the court reached a similar result citing *Vaughan v. Meier*, 246 S. W. 279 (Mo. 1922), which, in the words of our Supreme Court, "is close to, if it does not embrace, the doctrine of *res ipsa*, which we do not accept; but it comports with our holding in *Brock v. Carolina Scenic Stages*, 219 S. C. 360, 65 S. E. (2d) 468, 470, that in some instances at least, as there and as here, the fact that the evidence does not clearly disclose the cause of an accident does not necessarily exculpate the defendant."

manifestly unjust result. This is particularly true in drowning cases:[3]

*See e.g. City of Longmont v. Swearingen,* 81 Colo. 246, 254 P. 1000 (1927) (court held "to require direct evidence that, if a lifeguard had been present, death would not have resulted, would be to exact evidence which it would be impossible to obtain, and would result in a denial of justice."); *Kopera v. Moschella,* 400 F. Supp. 131 (S. D. Miss. 1975) (child found drowned, fully clothed in apartment house pool; court required no direct evidence establishing if a lifeguard had been present, death would not have occurred); *Bartley v. Childers,* 433 S. W. (2d) 130 (Ky. 1968) (court noted drownings are what safety standards requiring lifeguards, etc., are designed to prevent and held "this warrants an inference, as being a probable and natural explanation arising from common experiences of mankind, that the death was caused by the negligence.")

*See also e.g. Harris v. LaQuinta—Redbird Joint Venture,* 522 S. W. (2d) 232 (Tex. Civ. App. 1975) (court held broad latitude is allowed juries on proximate cause issue "in drowning cases where it is not possible to produce direct proof that a person could have been rescued if a lifeguard or proper lifesaving equipment had been provided."); *S & C Company v. Horne,* 218 Va. 124, 235 S. E. (2d) 456 (1977) (drowning case in which court imposed a duty to rescue on swimming pool owner and held proximate cause to be a jury question).

Finally, *see Northwestern Mutual Life Insurance Company v. McGivern,* 132 Ga. App. 297, 208 S. E. (2d) 258 (1974), which involves facts almost exactly like those before us here. Parents were informed their son had been submerged in the

---

[3] Professor Prosser puts it this way: "Whether the defendant's negligence consists of the violation of some statutory safety regulation, or the breach of a plain common law duty of care, the court can scarcely overlook the fact that the injury which has in fact occurred is precisely the sort of thing that proper care on the part of the defendant would be intended to prevent, and accordingly allow a certain liberality to the jury in drawing its conclusions." He uses as an example for proof of proximate cause based on circumstantial evidence and common knowledge: "When a child is drowned in a swimming pool, no one can say with certainty that a lifeguard would have saved him; but the experience of the community permits the conclusion that the absence of the guard played a significant part in the drowning." W. Prosser, Handbook of The Law of Torts § 41 at pp. 242, 243 (4th ed. 1971).

water of an apartment complex pool for "quite a while." Although the parents were poolside at the time, the boy's father then watched him for "an inordinate length of time, thinking the child was testing his ability to hold his breath." By the time the boy was retrieved from the pool, he was not breathing and had turned blue. In reversing summary judgment for the defendant, the court held the violation of a county ordinance requiring the presence of a pool attendant constituted negligence *per se*, and proximate cause of the injury remained a question for the jury.

In our opinion, the trial judge erred in ordering summary judgment in this case. A finding of negligence on the part of Shaw is clearly warranted. As previously discussed, it is evident he violated the requirements of Regulation 61-51(B)(10) in not having an employee trained in first aid on hand and not providing emergency equipment. Under the facts and circumstances of this case, and the inferences which can be drawn therefrom, the evidence is also sufficient to avoid summary judgment on the issue of proximate cause. Even though there may be no direct evidence that drowning was the cause of Mr. Coleman's death, an inference of drowning can be drawn from the evidence. It is common knowledge that water is an inhospitable environment in which to sustain human life. A person found dead after having been submerged for a prolonged period of time can be inferred to have drowned, absent evidence to the contrary. To require direct evidence here that had an employee trained in first aid been on hand and emergency equipment provided, the drowning would not have occurred, would amount to requiring evidence made impossible to obtain due to the very negligence of which Shaw is guilty.

We do not hold that the evidence now before us proves the negligence of Shaw caused Mr. Coleman's death. Rather, we hold only that such evidence is adequate on the issue of proximate cause so as to make summary judgment inappropriate.

Accordingly, the order of the trial judge is reversed and the case is remanded for trail.

Reversed and remanded.

GARDNER and BELL, JJ., concur.