Rick Carl BETTENCOURT and Kelly Bettencourt, husband and wife, Appellants (Plaintiffs),

v.

PRIDE WELL SERVICE, INC., a Texas corporation; Larry Welch, supervisor for Pride Well Services, Inc., Thatcher & Sons, Inc., a Wyoming corporation; Phillips Petroleum Company, a Delaware corporation; John Doe Corporations I through XX; and John Does I through XXX, Appellees (Defendants).

No. 86–43.

Supreme Court of Wyoming.

April 17, 1987.

Kenneth R. Marken and James T. Anest of Marken & Anest, Casper, and Gordon W. Jenkins of Ririe, Lee & Jenkins, Idaho Falls, Idaho, for appellants.

Cameron S. Walker of Schwartz, Bon, McCrary & Walker, Casper, for appellee Welch.

Jeffrey C. Brinkerhoff and Tim I. Munson of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellee Thatcher.

Richard L. Williams, Frank D. Neville, and Richard E. Day of Williams, Porter, Day & Neville, P.C., Casper, for appellee Phillips.

Before BROWN, C.J., THOMAS, URBIGKIT and MACY, JJ., and GUTHRIE, J., Retired.

THOMAS, Justice.

The question which we must address in this case is whether a summary judgment appropriately may be entered against an injured person who is afflicted with traumatic amnesia and for that reason is unable to specify what act or omission caused his injury. The district court held that there was no genuine issue of material fact in this case and that the several defendants were entitled to summary judgment as a matter of law because proximate cause, one of the elements of a cause of action for negligence, could not be established through the testimony of the injured person or others. The district court concluded that in the absence of such evidence causation became a matter of speculation or con-

jecture. We conclude that there is present a genuine issue of material fact relating to causation which arises out of permissible inferences to be drawn by the finder of fact. The summary judgment for defendants is reversed.

Rick Bettencourt was injured when he fell while attempting to descend a ladder on an oil storage tank located in Converse County, Wyoming. He brought this action to recover damages for his injuries, and his wife, Kelly, joined in the action to recover damages for loss of consortium. The named defendants were Bettencourt's employer, Pride Well Service, Inc., his immediate supervisor, Larry Welch, the manufacturer of the oil storage tank, Thatcher & Sons, Inc. (Thatcher), and the lessee of the oil storage tank, Phillips Petroleum Company (Phillips). Pride Well Service, Inc., was dismissed from the action, and following discovery, which included the depositions of Bettencourt and his fellow worker, Steve McGowen, the remaining defendants moved for summary judgment. The district court granted summary judgment to the several defendants, and after their motion to reconsider the grant of the summary judgment was denied, the Bettencourts appealed.

In their brief, the Bettencourts set forth the issues as:

"A. Did the appellees sustain their burden of showing the absence of genuine issues of material fact concerning the causation of appellants' injuries?

"1. What were the appellees' duties to exclude the controverted allegations of appellants' pleadings?

"2. What were the appellants' duties to contravene appellees' motions for summary judgment?

"B. In the absence of direct, eye-witness testimony concerning causation, are the appellants precluded from proving causation via circumstantial evidence on the grounds that such evidence would require speculation by the jury?

"C. Did the lower court err in denying appellants' 'Motion to Reconsider Defendants' Motions for Summary Judgment?' "

The several appellees submitted different expressions of the issues in their briefs. Welch stated the following:

"A. Did the District Court err in granting Larry Welch's motion for summary judgment?

"B. Did the District Court err in denying plaintiff Bettencourt's motion under Rule 59 of the Wyoming Rules of Civil Procedure?"

Phillips adopted Welch's first issue, but stated the second issue to be:

"B. Did Plaintiff Bettencourt fail to meet his burden of proving the existence of a genuine issue of material fact with respect to the proximate cause of his injury?"

Thatcher submitted the following statement of the issues:

"A. Did the trial court correctly find that there was no genuine issue of material fact and that Thatcher & Sons, Inc. was entitled to summary judgment as a matter of law?

"B. Is the trial court's denial of appellants' Rule 59 'Motion to Open, Alter or Amend the Order Granting Summary Judgment, and to Reconsider Defendants' Motions for Summary Judgment' a final appealable order?"

There appears to be no dispute as to the operative facts preceding and surrounding Bettencourt's fall so far as they are known. On November 16, 1983, Bettencourt was celebrating his birthday. He was contacted by Welch and told to come to work that evening. Bettencourt was reluctant to go in to work because he had been drinking, but he agreed to after Welch informed him that he would only be required to write down flow measurements taken from an oil tank which would be relayed to him by another employee. Welch told him that he would not need his work clothes or boots because of the limited nature of his assignment. Bettencourt went to the work office where he was introduced to Steve McGowen, the fellow employee who was to take the measurements from the oil tank. Bettencourt and McGowen were told the location of the tank from which they were to be taking the measurements that night and

that other workers on the scene would demonstrate for them the proper procedure to be followed in gauging the flow of the tank. The record indicates that neither of them were familiar with that procedure.

Bettencourt and McGowen proceeded to the work site, and by the time they arrived, it was dark, cold and windy. The workers from the preceding shift instructed McGowen with respect to the proper procedure in gauging the flow from the oil tank which included a requirement of an hourly reading throughout the 12–hour shift. In order to accomplish the gauging, one was required to climb a large 400–barrel oil storage tank, walk across the top of that tank to a second tank where the measurement of the flow of oil in the second tank was to be taken, and then return by the same path. One person could perform this gauging operation, but Bettencourt decided to accompany McGowen in order to learn the procedure. They completed the gauging measurement process in the first hour without incident. After they had taken the reading in the second hour and were returning to the ground, Bettencourt apparently fell from the ladder used in climbing to the top of the tanks and suffered serious injuries.

One aftereffect of Bettencourt's injuries is amnesia which prevents him from recalling any of the events of that night from the time he left the work office until he woke up in the hospital. Consequently, when his deposition was taken, Bettencourt could not state what had happened at the scene. The information concerning the events at the time of his injury comes from McGowen's deposition. McGowen testified that Bettencourt had gone with him to the top of the first oil tank, crossed over to the second oil tank where the required measurements were taken, and they then were returning to the ground at the time of the accident. There was no lighting at the tank site, and the only light available to make the journey up the ladder and across the tanks was flashlights. Because only one flashlight was carried to the top of the tanks, it was necessary for McGowen to light Bettencourt's path from the second tank across the first tank back to the lad-

der. McGowen was able to see Bettencourt reach the ladder on the first tank and begin his descent. McGowen then shifted the light beam to illuminate the path for his own walk across the second tank to the ladder. When McGowen reached the ladder on the first tank, he shined the beam from the flashlight on the ground below the ladder where he saw Bettencourt lying on the ground bleeding.

The surface of these oil tanks was smeared with oil and was slippery, and dirt had been spread across the first tank to the second to alleviate that condition. The ladder for ascending and descending the first tank had only one handhold at the top on the left side which consisted of a four-inch pipe which was difficult to grasp. McGowen testified that previously he had slipped on the same ladder himself and that, before descending, he wrapped his arm around the pipe because it was difficult to hold onto with his hand.

The theories of recovery alleged in the complaint were that Welch was culpably negligent in failing to adequately instruct and supervise Bettencourt with respect to the assigned task. Thatcher, it was alleged, had negligently designed and constructed the oil storage tank, including the ladder. The complaint charged Phillips with negligence in failing to provide a safe place to work alluding not only to the unsafe features of the constructed oil storage tank but also to the slippery surface and the failure to provide artificial lighting. Additionally, the complaint alleged that Phillips and Thatcher both were strictly liable as the providers of a defective product. After the issues were joined, depositions were obtained from Welch, McGowen and both of the Bettencourts.

Welch, Phillips and Thatcher moved for summary judgment arguing that there existed no issue of material fact and that each of them was entitled to judgment as a matter of law. In granting the several motions for summary judgment, the trial court decided that the Bettencourts had failed to meet their burden of proof as to causation. The district court concluded that, since it demonstrably was impossible

for the Bettencourts to offer evidence which would specify the causative factor or factors, the several defendants were entitled to judgment as a matter of law. In presenting this appeal, the parties agree that if the allegations of the complaint are controverted, by affidavits, depositions or testimony at the hearing, a plaintiff may not rely on his pleadings but must set forth information supported by competent evidence which demonstrates the existence of a genuine issue of material fact. *Board of County Commissioners of Fremont County, Wyoming v. Memorial Hospital of Natrona County*, Wyo., 682 P.2d 334 (1984). The Bettencourts insist, however, that the first step, i.e., that the allegations of the complaint are controverted, was not accomplished in this instance.

The entry of a summary judgment is authorized by Rule 56(c), W.R.C.P., " * * * if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." According to Rule 56(e), W.R.C.P. " * * * [w]hen a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond summary judgment, if appropriate, shall be entered against him." The requirements of Rule 56(c), W.R.C.P., recently have been applied in *Samuel Mares Post No. 8, American Legion, Department of Wyoming v. Board of County Commissioners of Converse County*, Wyo., 697 P.2d 1040 (1985); *O'Donnell v. City of Casper*, Wyo., 696 P.2d 1278 (1985); and *Larsen v. Roberts*, Wyo., 676 P.2d 1046 (1984).

In forming a decision with respect to the propriety of a summary judgment, the facts must be viewed in the light most favorable to the party opposing the summary judgment, and that party must be given the benefit of all favorable inferenc-es that may be drawn. *England v. Simmons*, Wyo., 728 P.2d 1137 (1986); *O'Donnell v. City of Casper*, supra; *Garner v. Hickman*, Wyo., 709 P.2d 407 (1985). The two words "if appropriate" in Rule 56(e) are not without significance. " '[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, *summary judgment must be denied even if no opposing evidentiary matter is presented.*' " *Thornton v. Evans*, 692 F.2d 1064, 1075 (7th Cir.1982), quoting the Advisory Committee Notes to Rule 56, Fed.R.Civ.P. (1963 amendments). In concluding that summary judgment was appropriate in this case, the district court said that it was:

"* * * [B]ased upon the failure of the Plaintiffs to meet their burden of proof as to causation. Liability cannot be established by conjecture. The affidavits, depositions, and other material in the file do not produce a clue as to why the plaintiff fell, there is no evidence as to causation."

We perceive the debate in this case to isolate the question of whether, given evidence which would establish the duty of care owed by a reasonable person under the circumstances and a breach of that duty, a plaintiff in a personal injury case is entitled to rely upon inferences to avoid the entry of a summary judgment even in light of a discovery record which demonstrates that the plaintiff can produce no evidence that a particular breach was the cause of his injuries. We note again that the Bettencourts are entitled to the benefit of all inferences to be drawn from the affidavits, depositions and other material appearing in the record. *Reno Livestock Corporation v. Sun Oil Company (Delaware)*, Wyo., 638 P.2d 147 (1981). Clearly, circumstantial evidence may be invoked to establish proximate cause in conjunction with or in the absence of direct evidence. *Colorado Serum Company v. Arp*, Wyo., 4 Cal.2d 511, 504 P.2d 801 (1972); *Miller v. Headerman*, Wyo., 464 P.2d 544 (1970); *O'Malley v. Eagan*, 43 Wyo. 233, 2 P.2d 1063 (1931); W. Prosser and W. Keeton on The Law of Torts, § 39 at 242 (5th ed. 1984); 4 F.

Harper, F. James and O. Gray, The Law of Torts, § 19.3 at 6–8 (2d ed. 1986); 58 Am. Jur.2d *Negligence* § 478 at 53 (1971). Furthermore, in negligence cases " '[e]ven where the facts bearing upon the issue of negligence are undisputed, * * *, if reasonable minds could reach different conclusions and inferences from such facts, the issue must be submitted to the trier of fact.' " *Fegler v. Brodie*, Wyo., 574 P.2d 751, 754 (1978), quoting *Marsden v. Patane*, 380 F.2d 489 (5th Cir.1967).

This court has developed only very limited exceptions to the foregoing propositions. In *Blackmore v. Davis Oil Company*, Wyo., 671 P.2d 334 (1983), we held, after examining the record from the perspective most favorable to the plaintiffs, that a bare inference contrary to direct testimony was insufficient to support a conclusion that a genuine issue of material fact existed. In that case, the plaintiffs' claim was a contractual theory founded upon the alleged use by the defendant of a prospectus supplied to it by the plaintiffs' predecessor in interest. In supporting its motion for a summary judgment, the defendant filed affidavits which stated unequivocally that it had not used the prospectus. The summary judgment in favor of the defendant was affirmed. On several occasions, we also have sustained summary judgments in medical malpractice cases in favor of defendants and said that there is no inference of a causal connection premised upon a bad result following treatment. E.g., *Harris v. Grizzle*, Wyo., 625 P.2d 747 (1981); *Keller v. Anderson*, Wyo., 554 P.2d 1253 (1976); *Stundon v. Stadnik*, Wyo., 469 P.2d 16 (1970).

The situation which led to the decision in *Blackmore v. Davis Oil Company, supra*, is far different from this case. The record here encompasses no affidavits or other evidence demonstrating that the acts or omissions of the several defendants did not cause Bettencourt's injuries. It does not appear that the defendants could have made such a showing any more than Bettencourt was able to demonstrate the converse. Under these circumstances, the rule developed in *Blackmore v. Davis Oil Company, supra*, has no application, and instead, we should invoke the rule that the Bettencourts are entitled to the benefit of all reasonable inferences which could be drawn in establishing the element of causation. This would lead to a conclusion that the defendants have not established their entitlement to judgment as a matter of law.

The concept of proximate cause and how it is to be established in a judicial forum is the crux of this case. In *McClellan v. Tottenhoff*, Wyo., 666 P.2d 408, 414 (1983), we said, "[p]roximate cause means that the accident or injury must be the natural and probable consequence of the act of negligence." That case involved the sale of intoxicating liquor to a minor, and we went on to hold that whether the vendor could foresee an injury to a third person would be the ultimate test. More recently, in *Buckley v. Bell*, Wyo., 703 P.2d 1089, 1091–1092 (1985), the following definition of proximate or legal causation was espoused:

> " * * * [T]hat conduct which is a substantial factor in bringing about the injuries identified in the complaint. * * * [I]f the conduct is 'that cause which in natural and continuous sequence, unbroken by a sufficient intervening cause produces the injury, without which the result would not have occurred,' it must be identified as a substantial factor in bringing about the harm." (Citations omitted.)

Our usual disposition is to treat proximate causation as a question of fact to be resolved by the trier of fact unless, on the evidence demonstrated in the file reasonable persons could not disagree. *McClellan v. Tottenhoff, supra*. In *O'Malley v. Eagan, supra*, this court held that the question of proximate cause is one to be decided by the trier of fact when different inferences might be drawn even though the evidence might be undisputed. In *O'Donnell v. City of Casper, supra*, we applied the general concept that whether an act is deemed a substantial factor is a question for the trier of fact which may be decided as a matter of law only if reasonable minds could not disagree. See the cases cited in *Buckley v. Bell, supra*.

The Kansas Supreme Court has aptly expressed the effect of circumstantial evidence upon the question of causation utilizing the following illustration:

"The fact that soon after the passing of an engine a fire starts near a railway track in an enclosed field, covered at the time with a growth of highly inflammable vegetation, and travels before a high wind in a direction away from the track, is sufficient to warrant a jury in finding that the fire was caused by the operation of the railroad, without its appearing that the engine emitted sparks or live cinders or was put to special exertion, and without further proof excluding other possible origins." (Syl. ¶ 1.) *Kansas City, Ft. S. & M.R. Co. v. Perry*, 65 Kan. 792, 70 P. 876 (1902).

That court also has noted in citing the earlier case that circumstantial evidence need not rise to that degree of certainty which will exclude any and every other reasonable conclusion in order to sustain a finding in a civil case. *American Family Mutual Insurance Company v. Grim*, 201 Kan. 340, 440 P.2d 621 (1968).

Cases relied upon by the appellees are distinguishable. In *Bluejacket v. Carney*, Wyo., 550 P.2d 494 (1976); and *LeGrande v. Misner*, Wyo., 490 P.2d 1252 (1971), we sustained the granting of summary judgments because the undisputed facts demonstrated the absence of any duty owed by the defendant to the plaintiff. The existence of a duty is a question of law to be determined by the court. *Caterpillar Tractor Company v. Donohue*, Wyo., 674 P.2d 1276 (1983); *McClellan v. Tottenhoff, supra; Beard v. Brown*, Wyo., 616 P.2d 726 (1980). Similarly, we must distinguish *Apperson v. Kay*, Wyo., 546 P.2d 995 (1976), because the plaintiff there admitted that there was no evidence of a defect in the accused appliance, and the only suggestion of a possible defect came from hearsay which would not be admissible at trial.

In this case, appellee Thatcher, as the designer and manufacturer of the oil tank, owed a duty to Bettencourt and others to refrain from selling products that were negligently designed or manufactured.

The testimony of McGowen made it clear that the only means of access to the top of the tank was a ladder welded to the side of the tank and that the ladder at the top had only one handhold on the left side. McGowen testified that the handhold was four-inch pipe which was so difficult to grasp that he wrapped his arm around the pipe before descending the ladder to prevent him from slipping off. No safety cage, safety belt or any other means was provided in connection with that ladder to prevent a fall in the event of a slip.

Defendant Phillips owed a duty to provide Bettencourt and others a reasonably safe place to work. It is clear that there was no artificial lighting provided at the site of these tanks, and the only lighting available was the flashlight which McGowen carried, despite the necessity for working in the area at night. The presence of oil on the top of the tanks with a dirt path covering it also was undisputed. Furthermore, in using the tank with the type of handrail described, Phillips may well be charged with the same duty and breach as Thatcher.

These factors make this case analogous to *Zinnel v. United States Shipping Board Emergency Fleet Corporation*, 10 F.2d 47 (2d Cir.1925), in which the court held that the failure of the ship owner to provide a guard rope which might have been grabbed by a sailor who was swept overboard and drowned presented a question of fact for the jury which made dismissal of the complaint improper. Judge Learned Hand authored the opinion of the court which held:

"There of course remains a question whether they [the jury] might have also said that the fault caused the loss. About that we agree no certain conclusion was possible. Nobody could, in the nature of things, be sure that the intestate would have seized the rope, or, if he had not, that it would have stopped his body. But we are not dealing with a criminal case, nor are we justified, where certainty is impossible, in insisting upon it. We cannot say that there was no likelihood that a rope three feet above the deck made by the timber would not

have saved the seaman. * * * [W]e think it is a question about which reasonable men might at least differ whether the intestate would not have been saved, had it been there." *Zinnel v. United States Shipping Board Emergency Fleet Corporation*, supra, at 49.

See also *Kirincich v. Standard Dredging Company*, 112 F.2d 163 (3d Cir.1940), (whether or not intestate could have been saved from drowning had something more buoyant been available than a one-inch heaving line presented a question of fact for the jury as to proximate cause); *Tesmer v. Rich Ladder Company*, Minn., 380 N.W.2d 203 (1986), (whether or not defective design in ladder and inadequate warnings and instructions for safe use were the proximate cause of plaintiff's injuries was a question of fact for the jury); cases cited in 4 F. Harper, F. James and O. Gray, The Law of Torts, supra, § 20.2 at 98 n. 18.

The absence of lighting is a significant factor also. In *Coleman v. Shaw*, 281 S.C. 107, 314 S.E.2d 154 (1984), the defendant violated an ordinance by failing to have a lifeguard at the swimming pool in which the plaintiff's husband drowned. The defendant urged that, in the absence of any eye witness, only by speculation could the trier of fact conclude that the violation of the ordinance was a proximate cause of the drowning. A summary judgment entered in the trial court was vacated by the appellate court which held that a defendant should not benefit from its failure to provide a lifeguard. Certainly, in this instance Phillips should not benefit by virtue of the fact that the absence of adequate lighting well may have prevented McGowen from witnessing Bettencourt's fall.

In *Vitanza v. Growth Realties, Inc.*, 91 A.D.2d 917, 457 N.Y.S.2d 544 (1983), the court rejected an argument by defendant that as a matter of law the evidence was insufficient to establish causation in an instance in which the plaintiff could show that she fell down steps which had loose edges and protruding nails, but she could not establish how her fall began. The court there approved the following statement from W. Prosser and W. Keeton on the Law of Torts, supra, § 41 at 269–270:

"The fact of causation is incapable of mathematical proof * * *. If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion might be permissible that the causal relation exists."

This statement does reflect an accurate rule of law. In the same work, the following comment also appears:

"Circumstantial evidence, expert testimony, or common knowledge may provide a basis from which the causal sequence may be inferred. Thus it is every day experience that unlighted stairs create a danger that someone will fall. Such a condition 'greatly multiplies the chances of accident, and is of a character naturally leading to its occurrence.' When a fat person tumbles down the steps, it is a reasonable conclusion that it is more likely than not that the fall would not have occurred but for the bad lighting. When a child is drowned in a swimming pool, no one can say with certainty that a lifeguard would have saved the child; but the experience of the community permits the conclusion that the absence of the guard played a significant part in the drowning. Such questions are peculiarly for the jury; and whether proper construction of a building would have withstood an earthquake, or whether reasonable police precautions would have prevented a boy from shooting the plaintiff in the eye with an airgun, are questions on which a court can seldom rule as a matter of law." W. Prosser and W. Keeton on The Law of Torts, supra, § 41 at 270.

The counterproposition is set forth in F. Harper, F. James and O. Gray, The Law of Torts, supra, § 19.4 at 9, in which the authors, quoting *Eitel v. Times, Inc.*, 221 Or. 585, 352 P.2d 485, 488 (1960), state:

" * * * Where from the facts most favorable to the plaintiff the nonexistence of the fact to be inferred is just as probable as its existence (or more probable than its existence), the conclusion that it exists is a matter of speculation, surmise,

and conjecture, and a jury will not be permitted to draw it. '[W]here the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that there is no sufficient proof.'" (Footnotes omitted.)

An analysis of our prior cases discloses that, in ruling on summary judgments in negligence cases when the issue was the absence of the element of causation, we have upheld summary judgments for defendants only in limited circumstances. If causation were clearly refuted by positive evidence contained in discovery materials, the summary judgment would be sustained. Cf., *Blackmore v. Davis Oil Company,* supra. In cases such as medical malpractice cases in which a presumption of no breach of duty causing injury is present, in the absence of evidence establishing causation, the summary judgment will be sustained. *Harris v. Grizzle,* supra; *Stundon v. Stadnik,* supra. In any other situation in which the discovery materials or unrefuted allegations disclose a duty and a breach of that duty, we treat the existence of the element of causation as more probable than its nonexistence; and we require the issue to be submitted to the finder of fact.

■ We hold that in this instance the circumstantial evidence presents a question for the jury and extends beyond conjecture, speculation or surmise. The circumstantial evidence here present and common knowledge provide a basis from which the causal sequence may be inferred. Reasonable minds could differ on the question, but they also could find that the design of the oil tank and the attached ladder; the absence of artificial lighting; the oil on top of the tanks; and the continued use of the tank with the ladder in the condition described by McGowen or any or all of these did constitute a substantial factor in bringing about the injuries to Bettencourt. Under the circumstances, the summary judgment in favor of Thatcher and Phillips must be reversed.

■ We affirm the summary judgment in favor of Welch. He was a fellow employee of Bettencourt and owed only a duty to refrain from culpable negligence. § 27–12–103(a), W.S.1977. In *Bryant v. Hornbuckle,* Wyo., 728 P.2d 1132, 1136 (1986), quoting *Hamilton v. Swigart Coal Mine,* 59 Wyo. 485, 143 P.2d 203, 206, 149 A.L.R. 998 (1943), we said:

> "In order to recover against a coemployee under this section of the Worker's Compensation Act, a plaintiff must establish more than simple negligence; the coemployee's conduct must constitute 'culpable' negligence. In *Barnette v. Doyle,* Wyo., 622 P.2d 1349, 1362 (1981), we defined the term 'culpable negligence' as 'willful and serious misconduct.' We defined the term 'willful' in this context as ' "such as is done purposely, with knowledge—or misconduct of such a character as to evince a reckless disregard of consequences." '

> "The aggravating factor which distinguishes willful misconduct from ordinary negligence is the actor's state of mind. See Prosser and Keeton on Torts, § 34 (5th ed. 1984). In order to prove that an actor has engaged in willful misconduct, one must demonstrate that he acted with a state of mind that approaches intent to do harm. Id. State of mind, of course, may be difficult to prove. Accordingly, courts allow a party to establish that willful misconduct has occurred by demonstrating that an actor has intentionally committed an act of unreasonable character in disregard of a known or obvious risk that is so great as to make it highly probable that harm will follow."

The undisputed evidence demonstrating that Welch advised Bettencourt to report for work without his work coveralls and boots even though he would be working on a cold and windy night; his knowledge that Bettencourt had been celebrating his birthday by drinking intoxicating beverages; and the limitation on Bettencourt's function to record the gauging readings all fall short of demonstrating culpable negligence, i.e., an intent by Welch to harm Bettencourt or actions by him that had a high probability of causing harm to Betten-

court. The summary judgment in favor of Welch is affirmed.

Affirmed in part and reversed in part for proceedings consistent with the opinion of the court.