**WESTERN EQUIPMENT CO., INC., a Wyoming Corporation, Appellant (Plaintiff below),**

v.

**SHERIDAN IRON WORKS, INC., Appellee (Defendant below),**

Oil Field Camps, Inc. (Defendant below).

No. 5099.

Supreme Court of Wyoming.

Jan. 24, 1980.

Donald E. Chapin and W. Michael Kleppinger of Crowell & Chapin, P. C., Casper, for appellant.

Cameron S. Walker and Richard R. Wilking of Schwartz, Bon & McCrary, Casper, and E. E. Lonabaugh of Lonabaugh & Vanderhoef, Sheridan, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

THOMAS, Justice.

The question raised by this appeal is whether privity of contract is required or is not required in an action by a remote pur-

chaser against a manufacturer to recover an economic loss. The district court held that privity of contract is required, and it granted a summary judgment to the manufacturer. We shall hold that privity of contract is not necessary in such an action. The summary judgment must be reversed and the cause remanded to the district court for trial in accordance with the views expressed in this opinion.

We first identify the dramatis personae as follows:

Sheridan Iron Works, Inc. (hereinafter referred to as Sheridan)—This firm engaged in the business of steel fabrication. It manufactured and sold two water tanks to be mounted on heavy-duty trucks which were to be used in the hauling of water in the oil fields.

Oil Field Camps, Inc. (the principal in the corporation was Michael L. Stone, and for convenience this party will hereinafter be referred to as Stone since this was apparently a one-man operation)—Stone bought the water tanks from Sheridan and resold them. He was the primary source of information furnished to Sheridan relative to the specifications for the water tanks.

Western Equipment Co., Inc. (hereinafter referred to as Western)—Western bought the water tanks from Stone. Western furnished two heavy-duty trucks upon which the water tanks were mounted at Sheridan.

O. L. Speer and Les Morris d/b/a O. L. Speer Water Service (for convenience hereinafter referred to as Speer)—Speer bought the heavy-duty trucks with the water tanks mounted thereon from Western. It was Speer's purpose to devote these two units to the hauling of water for oil field operations.

This sequence of transactions is illustrative of the usual process of distribution of manufactured goods to the ultimate consumer. The process normally involves a series of purchases and resales prior to the goods reaching the ultimate consumer.

Rather promptly after Speer put the two trucks to use in its business of hauling water the tanks which had been mounted on the trucks by Sheridan began to fail dramatically. They leaked in a number of places, and depending upon the length of the haul route the loss of water during the journey could be quite substantial. Speer was "run off" one job because of the failure of the tanks. Complaint was made by Speer to Western and Western contacted Stone. At the request of Western, Stone got in touch with Speer and told Speer to fix the tanks and he would see that the bill was paid. Sheridan was notified of the failure of the tanks, and agreed to the repair of the tanks by Speer. Sheridan paid the repair bill for the initial repairs, and Stone contributed one-half of that amount to Sheridan.

These repairs were not successful, however, and Speer continued to experience difficulty with the tanks. Western ultimately replaced the water tanks by purchasing other tanks from a different supplier. Western then brought this action against Oil Field Camps, Inc. (Stone) and Sheridan Iron Works, Inc. Recovery was sought for the cost of the new tanks in the amount of $10,200; the cost of installation and incidental costs in the amount of $5,000; the cost of repairs made by Western and Speer in the amount of $1,200.38; and loss of time and profits in the amount of $10,000. The theories of recovery asserted by Western are breach of express warranty and implied warranties of fitness and merchantability. The loss sought to be recovered was "an economic loss," which has been very ably defined by the Supreme Court of Idaho as follows:

" * * * Economic loss includes costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use. *See, e. g.,* J. White & R. Summers, Uniform Commercial Code, 329–35 (1972); W. Prosser, Torts, § 101 (4th ed. 1971); Note, 'Economic Loss in Products Liability Jurisprudence,' 66 Colum.L.Rev. 917 (1966); Comment, 114 U.Pa.L.Rev. 539, 541 (1966). * * * " (Footnote

omitted.) *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Company,* 97 Idaho 348, 544 P.2d 306, 309–310 (1975).

The express warranty apparently asserted by Western is based not upon any express contractual language but arguably arises out of conduct pursuant to § 34–21–230, W.S.1977. While not an issue expressly argued in previous cases before this court, the circumstances involved in *Kure v. Chevrolet Motor Division,* Wyo., 581 P.2d 603 (1978), and *Colorado Serum Company v. Arp,* Wyo., 504 P.2d 801 (1972), lead to a conclusion that privity is not required in an action by a remote purchaser against a manufacturer based upon an express warranty. The facts encompassed in the record in this case, however, do not lend themselves well to a theory of express warranty, and we treat this case as one in which recovery is sought upon implied warranties of merchantability and fitness for a particular purpose.

As expressed by Western in its brief: "1. The one issue on appeal is whether summary disposition of the claim asserted by Western Equipment Company, Inc., against Sheridan Iron Works, Inc., was proper pursuant to the provisions of Rule 56, Wyoming Rules of Civil Procedure. The issue, of course, involves two subissues:

"a. Whether there exist any genuine issues of material fact as between Western Equipment Company, Inc., and Sheridan Iron Works, Inc.

"b. Whether Sheridan Iron Works, Inc., is entitled to a judgment as a matter of law by virtue of a lack of privity between Western Equipment Company, Inc., and Sheridan Iron Works, Inc."

The summary judgment was granted by the district court based upon a legal conclusion which made any other genuine issues of fact immaterial. The district court in the judgment appealed from held:

"4. There is no privity of contract between the Plaintiff and the Defendant Sheridan Iron Works, Inc., and, for that reason, said Defendant is entitled to judgment as a matter of law; * * * *"

The legal dynamics of the problem here posed are quite interesting. We have identified three matters of significance which lead to our conclusion that no privity of contract is required in an action based upon theories of breach of implied warranties of fitness for a particular purpose and merchantability in which a remote purchaser seeks to recover from a manufacturer an economic loss which the purchaser sustained. Without ascribing any rank of significance these factors are:

1. A definite divergence of opinion in other jurisdictions as to whether privity should or should not be required in such actions. Examples of cases in which privity is required are: *Koellmer v. Chrysler Motors Corp.,* 6 Conn.Cir. 478, 276 A.2d 807, cert. denied 160 Conn. 590, 274 A.2d 884 (1970); *General Motors Corp. v. Halco Instruments, Inc.,* 124 Ga.App. 630, 185 S.E.2d 619 (1971); *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.,* 97 Idaho 348, 544 P.2d 306 (1975); *Oliver v. City Builders, Inc.,* Miss., 303 So.2d 466 (1974); *Hupp Corp. v. Metered Washer Service,* 256 Or. 245, 472 F.2d 816 (1970); and *City of LaCrosse v. Schubert, Schroeder & Associates, Inc.,* 72 Wis.2d 38, 240 N.W.2d 124 (1974). Examples of cases in which privity is not required are: *Morrow v. New Moon Homes, Inc.,* Alaska, 548 P.2d 279 (1976); *Manheim v. Ford Motor Co.,* Fla., 201 So.2d 440 (1967); *Lang v. General Motors Corp.,* N.D., 136 N.W.2d 805 (1965); *Hiles Co. v. Johnston Pump Co.,* Nev., 560 P.2d 154 (1977); *Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848 (1968); and *Nobility Homes of Texas, Inc. v. Shivers,* Tex., 557 S.W.2d 77 (1977).

2. The unique provision in the Wyoming statute relating to third-party beneficiaries of warranties. Our statute reads as follows:

"§ 34–21–235. Third party beneficiaries of warranties express or implied.

"A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume, or be affected by the goods and who is

injured by breach of the warranty. A seller may not exclude or limit the operation of this section."

The editorial board comment to § 2–318, Uniform Commercial Code, suggests the following alternatives for this provision:

"Alternative A

"A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

"Alternative B

"A seller's warranty whether express or implied extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

"Alternative C

"A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends. As amended 1966." 1A U.L.A., p. 52 (1976).

It is to be noted that the provision as adopted in Wyoming differs from each of these suggested alternatives.

3. The stance which this court has taken with respect to privity for breach of an implied warranty of fitness and habitability in *Moxley v. Laramie Builders, Inc.*, Wyo., 600 P.2d 733 (1979). While we did not necessarily discuss in that case a concept of privity, the result is clearly inconsistent with a requirement of privity in a case in which recovery is sought based upon an implied warranty of fitness and habitability.

The structure of the sales article of the Uniform Commercial Code as adopted by our legislature, §§ 34–21–201, et seq., W.S. 1977, seems to focus upon a single transaction involving a contract between a buyer and a seller. For example, in § 34–21–203, W.S.1977, the definitions section of this article, each of these words is defined in the singular, and scattered through other provisions of the Code are the use of the terms buyer and seller in the singular. E.g., §§ 34–21–218, 34–21–229, 34–21–230, 34–21–231, 34–21–232, 34–21–247, 34–21–249, and 34–21–264 through 299. Because of this focus upon a single-transaction concept we can see a good deal of logic in the rule espoused by those jurisdictions which still require privity of contract in an action brought to recover an economic loss. The privity requirement is more compatible with the single-transaction structure of those sections of the Uniform Commercial Code dealing with sales.

On the other hand the philosophy expressed in the cases from the jurisdictions which hold that privity is not required in an action by a remote purchaser against a manufacturer to recover a purely economic loss is consistent with the result of our decision in *Moxley v. Laramie Builders, Inc.,* supra. It also is consistent with the language of this court in *Colorado Serum Company v. Arp,* supra. We note also that that philosophy is more consistent with the modern developments of the law in connection with actions for personal injuries and damage to property other than the subject matter of the contract.

If we are to examine only the statutory language found in § 34–21–235, W.S.1977, relating to third-party beneficiaries, we should have to recognize a breadth of coverage which definitely suggests a legislative intention to abandon the requirement of privity. We recognize that the drafters of the Uniform Commercial Code have suggested that this provision is neutral with respect to the extension of warranties from one level to another of the distributive change:

"The first alternative expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. Beyond this, the section in this form is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain. * * * " 1A U.L.A., p. 54 (1976).

This feature of the provision as found in the Uniform Commercial Code is noted in both *Morrow v. New Moon Homes, Inc.,* supra, and in *Kassab v. Central Soya,* supra. That comment, however, is made with respect to the alternative provisions of the Uniform Commercial Code, none of which are exactly like our provision. We emphasize that under our statute the warranty extends "to any person who may reasonably be expected to use, consume or be affected by the goods." There is no limitation on the style of injury to be suffered by that person, and consequently this statute in its language is sufficiently broad to cover an action by a remote purchaser for an economic loss.

■ We therefore hold that a remote purchaser such as Western is not foreclosed from bringing an action to recover an economic loss, as heretofore defined, from a manufacturer such as Sheridan because of lack of privity. In so holding we in effect require that the provision found in § 34–21–235 becomes an implied provision in any contract for the sale of goods. The effect is to interpret the definition of the word "buyer" as it appears in § 34–21–203, W.S. 1977, to include with respect to any previous seller in the distributive chain "any person who may reasonably be expected to use, consume, or be affected by the goods." In reaching this conclusion, we must accept the potential impact of our holding upon § 34–21–233, W.S.1977, which permits the exclusion, modification, or limitation of warranties by contract. As it has come before this court this case does not present an appropriate vehicle for judicial abrogation of that legislative enactment. In an effort to harmonize the legislative recogni-

tion of the right to so contract with our judicial philosophy relating to privity, we conclude that the effect of our decision is to identify Western as a buyer in the transaction in which Sheridan was the seller. As a buyer in that transaction, however, Western cannot deprive Sheridan of any lawful exclusion, modification, or limitation of warranties it may have structured in its contract of sale. While Western has the right to proceed in its action against Sheridan it can only do so subject to the provisions of Sheridan's contract with Stone, and the statutory obligations imposed upon a buyer. *Morrow v. New Moon Homes, Inc.,* supra.

In seeking to overturn the summary judgment entered against it in the district court, Western also has urged upon the court the proposition that there were genuine issues of facts relating to other aspects of the case which are material if Western's position that privity is not required were adopted or which would tend to establish privity of contract. They included such matters as the possibility that Stone was an agent of Sheridan; contentions relating to the asserted express warranties by Sheridan; the manner in which the tanks were built; and whether Western fits within the statutory definition found in § 34–21–235; W.S.1977. In view of the reversal of the summary judgment on the basis set forth above, we have concluded that we need not further consider those issues in this opinion.

■ One matter raised by Sheridan Iron Works in defending this appeal does merit further comment. Sheridan contends that the judgment of the district court should be affirmed in any event because of the failure to give notice in accordance with § 34–21–270, W.S.1977, which provides in pertinent part:

"(c) Where a tender has been accepted:

"(i) The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; * * * "

Sheridan does not deny that notice was given of the initial problems, but contends

that no further notice was given after the initial repairs for which it paid and prior to the initiation of the litigation. The state of the record before us is that a witness for Sheridan testified by deposition that he received no such notice; Stone testified that he didn't give notice after the initial repairs; but Speer testified that he called Sheridan several times after the initial repairs with the subject being the unsatisfactory performance of the tanks. In its present posture we find an issue of fact in the record as to notice which would not be a material fact if privity of contract were required. Having held that privity is not required, we point out that furnishing notice under the statute is an obligation imposed upon one who asserts a right to relief as a buyer. *Prutch v. Ford Motor Company*, Colo.App., 574 P.2d 102 (1977). The trial court should then be concerned upon remand with whether the evidence does disclose that the statutory notice of *the breach upon which the claim is premised* was given to Sheridan.

The judgment is reversed and the case is remanded to the district court for further appropriate proceedings.