**Motion for Rehearing Granted; Reversed and Remanded; Opinion of October 11, 2011 Withdrawn, and Substitute Opinion filed March 15, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-09-00895-CV

### DOUG SHOWS, Appellant

### V.

### MAN ENGINES & COMPONENTS, INC. AND MAN NUTZFAHRZEUGE AKTIENGESELLSCHAFT, Appellees

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2006-38352**

## S U B S T I T U T E   O P I N I O N [1]

The owner of a yacht sued the manufacturer of the yacht's engines and the manufacturer's subsidiary, asserting various claims for damages allegedly suffered as a result of major engine failure. The jury rendered a verdict in favor of the vessel's owner on his claim for breach of the implied warranty of merchantability. On appeal, the vessel owner asserts that the trial court erred in granting a take-nothing judgment against him,

---

[1] We grant appellant's motion for rehearing, withdraw the opinion issued in this case on October 11, 2011, and issue this opinion in its place.

notwithstanding the jury's verdict.  Concluding that the trial court erred, we reverse the judgment notwithstanding the jury's verdict and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant/appellee Man Nutzfahrzeuge Aktiengesellschaft (hereinafter, "Man Germany"), a German company named as a defendant below, manufactured engines that were installed in a fifty-foot yacht (hereinafter, the "Vessel").  The model year of the Vessel is 1988.  The engines in question were installed on the Vessel in 2000.  In September 2002, plaintiff/appellant Doug Shows purchased this Vessel knowing that the Vessel and its engines were not new but used.  Shows was the Vessel's third owner since these engines were installed and commissioned.

In June 2004, the Vessel allegedly suffered a major engine failure, allegedly due to a defective valve that caused major damage to the starboard engine.  The following summer, in June 2005, the Vessel suffered a second major engine failure, allegedly due to a defective valve, which allegedly damaged the starboard engine beyond repair, such that the engine had to be replaced.

The following year, in June 2006, Shows filed this suit against Man Germany and defendant/appellee Man Engines & Components, Inc. (hereinafter, "Man Engines"), eventually asserting claims for negligence, violations of the Texas Deceptive Trade Practices Act ("DTPA"), breach of express and implied warranties, and intentional and negligent misrepresentation.  Man Germany filed a special appearance, but did not file an answer subject to that special appearance.  Before trial, the trial court denied Man Germany's special appearance.  Without having filed an answer, Man Germany appeared at trial through its counsel and corporate representative.  Shows did not seek a judgment nihil dicit against Man Germany based on its failure to answer until after he rested his case in chief at trial.  The trial court denied Shows's request for a judgment nihil dicit.

At trial, the jury was charged on claims for breach of express warranties, breach of

implied warranties, and DTPA violations. The jury found liability only on the claim for breach of the implied warranty of merchantability. The only damages the jury awarded resulting from this breach was "the cost to replace the engine(s) in 2005," which the jury found was $89,967. Shows moved for judgment on the jury's verdict.

Man Germany and Man Engines (hereinafter collectively, the "Man Parties") filed a motion for judgment notwithstanding the verdict, arguing as follows:

(1)     The claim for breach of the implied warranty of merchantability under section 2.314 of the Texas Business and Commerce Code fails as a matter of law because an essential element is missing, namely privity of contract between Shows and the Man Parties.

(2)     It is undisputed that Shows was the third owner of the engines at issue and that he purchased the Vessel used. As a matter of law, there is no implied warranty of merchantability because Shows bought the Vessel knowing the Vessel and its engines were used.

(3)     Because the engines were delivered to the original buyer in October 2000, any implied warranty of merchantability expired four years later in October 2004. Shows cannot recover based upon an implied warranty that expired before the 2005 repairs were made. The Man Parties asserted that this is not a statute-of-limitations issue but rather an issue regarding the expiration of the implied warranty.

(4)     By means of the document contained in Defendant's Exhibit 1, the first purchaser of the engines effectively disclaimed the implied warranty of merchantability as a matter of law and therefore Shows cannot recover for breach of the implied warranty of merchantability.

(5)     There is no evidence to support the jury's damages finding because there is no evidence that the costs of the 2005 repair were reasonable and necessary, as required by Texas law.[2]

The trial court granted the Man Parties' motion for judgment notwithstanding the verdict (hereinafter, "JNOV Motion") and rendered a take-nothing judgment against Shows. In its written order, the trial court stated that it was granting the JNOV Motion based upon

---

[2] Though the Man Parties sought judgment notwithstanding the verdict, they did not challenge any jury question as being immaterial in any post-trial motion.

3

grounds (1), (2), and (4), above. As to ground (3), the trial court stated that it found this argument to be a statute-of-limitations argument and concluded that because the Man Parties did not plead limitations, this ground provided no basis for relief. The trial court did not expressly address the fifth ground.

In two appellate issues, Shows asserts the trial court erred in granting the JNOV Motion and in refusing to grant his motion for judgment nihil dicit. In a cross-point, the Man Parties assert that Shows is not entitled to judgment as a matter of law because he failed to properly designate an expert regarding reasonable and necessary repair costs and because there is no evidence that the damages awarded by the jury are reasonable and necessary repair or replacement costs.

## II.    ISSUES AND ANALYSIS

**A.    As a matter of law, may a subsequent buyer of used goods sue the manufacturer of the goods for a breach of the implied warranty of merchantability that allegedly occurred when the goods left the manufacturer's possession as part of the first sale of the goods?**

Under his first issue, Shows asserts that the trial court erred in granting relief based upon the second ground in the JNOV Motion. Under this ground, the trial court concluded that there is no implied warranty of merchantability in favor of a buyer who purchases goods knowing that they are used. In support of this ground, the Man Parties rely upon the *Chaq Oil Company* case and court-of-appeals cases following it, in which the courts hold that an implied warranty of merchantability does not arise when a buyer purchases goods knowing that they are used (hereinafter the "*Chaq Oil* Rule").[3] *See Bren-Tex Tractor Co. v. Massey Ferguson, Inc.*, 97 S.W.3d 155, 159, n.8 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Chaq Oil Co. v. Gardner Machine Corp.*, 500 S.W.2d 877, 878 (Tex. Civ. App.—Houston [14th Dist.] 1973, no writ); *Southerland v. Northeast Datsun, Inc.*, 659 S.W.2d 889, 891 (Tex. App.—El Paso 1983, no writ); *Bunting v. Fodor*, 586 S.W.2d 144, 145–46 (Tex. Civ. App.—Houston [1st Dist.] 1979,

---

[3] The Supreme Court of Texas has not yet addressed this issue.

no writ); *Valley Datsun v. Martinez*, 578 S.W.2d 485, 489 (Tex. Civ. App.—Corpus Christi 1979, no writ). Commentators have criticized the *Chaq Oil* Rule, arguing that this rule is contrary to the unambiguous language of the Uniform Commercial Code and lacks a sound basis. *See* Kendall M. Gray, Comment, *Merchantability and Used Goods Do You Really Get What You Pay For?* 45 BAYLOR L. REV. 665, 671–83 (1993); John F. Hunt, Comment, *Implied Warranties of Quality on Used Motor Vehicles in Texas*, 9 ST. MARY'S L.J. 308, 315–22 (1977); John J. Stasney III, Comment, *UCC Implied Warranty of Merchantability and Used Goods*, 26 BAYLOR L. REV. 630, 637–41 (1974). Texas is one of the few states to follow the *Chaq Oil* Rule; most state courts that have addressed this issue have concluded that a warranty of merchantability is implied in a contract for the sale of goods, even if the buyer purchases the goods knowing that they are used. *See Beck Enterprises, Inc. v. Hester*, 512 So. 2d 672, 675–76 (Miss. 1987) (surveying cases from various states on this issue); *Moore v. Burt Chevrolet, Inc.*, 563 P.2d 369, 370 (Colo. Ct. App. 1977) (same).

But, significantly, the cases supporting the *Chaq Oil* Rule address whether an implied warranty of merchantability arises when a subsequent buyer purchases goods knowing that they were used; these cases do not address whether the subsequent buyer may sue the manufacturer of the goods for a breach of the implied warranty of merchantability that allegedly occurred when the goods left the manufacturer's possession as part of the first sale of the goods. *See Bren-Tex Tractor Co.*, 97 S.W.3d at 159, n.8; *Chaq Oil Co.,* 500 S.W.2d at 878; *Southerland*, 659 S.W.2d at 890–91; *Bunting*, 586 S.W.2d at 144–46; *Valley Datsun*, 578 S.W.2d at 489.[4] These cases address whether a subsequent buyer of used goods may sue the subsequent seller based upon an implied warranty of merchantability arising in the subsequent sale. *See Bren-Tex Tractor*

---

[4] Though the *Bren-Tex Tractor* court analyzed claims against the manufacturer of a tractor, the *Bren-Tex Tractor* court did not analyze claims by the subsequent purchaser against the manufacturer. *See Bren-Tex Tractor Co.*, 97 S.W.3d at 158. Instead, that case involved a claim against the manufacturer for indemnity by the seller of the used tractor, and the issue was whether the seller was independently liable so as to preclude the seller's recovery on the indemnity claim. *See id.* Therefore, the *Bren-Tex Tractor* court addressed whether the buyer of the used tractor had a claim for breach of the implied warranty of merchantability against the seller of the used tractor. *See id.* 158–61 & n.8.

5

*Co.*, 97 S.W.3d at 159, n.8; *Chaq Oil Co.,* 500 S.W.2d at 878; *Southerland*, 659 S.W.2d at 890-91; *Bunting*, 586 S.W.2d at 144–46; *Valley Datsun*, 578 S.W.2d at 489. Even though a warranty of merchantability is not implied under Texas law in such a contract for the sale of used goods, a warranty of merchantability still may be implied in a contract for the sale of new goods by the manufacturer. *See Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 81 (Tex. 1977).

Though the trial evidence proves as a matter of law that Shows bought the Vessel knowing that the Vessel and its engines were used, Shows did not sue the person who sold him the Vessel. Thus, this case does not involve any issue as to whether a warranty of merchantability was implied in the 2002 contract by which Shows purchased the Vessel. Instead, this case involves a different question: whether a subsequent buyer of used goods may sue the manufacturer of the goods for a breach of the implied warranty of merchantability that allegedly occurred when the goods left the manufacturer's possession as part of the first sale of the goods.[5] As to this issue, the cases supporting the *Chaq Oil* Rule are not on point. The parties have not cited and research has not revealed any Texas case that directly addresses this issue.

Unlike most other states, Texas adopted the Uniform Commercial Code without choosing any of its three statutory options concerning who may sue on warranties; instead, the Texas Legislature expressly delegated that choice to the courts. *Compare* U.C.C. § 2.318 (1966) (providing three alternatives under which a seller's express or implied warranties extend to either (1) any natural person in the family or household of the seller's buyer or who is a houseguest of the buyer, if it is reasonable to expect that such person may use, consume, or be affected by the goods and who suffers personal injury as a result of the breach of warranty, (2) any natural person who may reasonably

---

[5] To prove a breach-of-implied-warranty-of-merchantability claim, the plaintiff must show, among other things, that when the goods left the defendant's possession they "were unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy, *i.e.,* because of a defect." *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989). The jury's liability finding is broad enough to encompass a breach of the implied warranty of merchantability by the Man Parties in 2000, when the engines were delivered to the original buyer.

be expected to use, consume, or be affected by the goods and who suffers personal injury as a result of the breach of warranty), or (3) any person who may reasonably be expected to use, consume, or be affected by the goods and who suffers injury as a result of the breach of warranty), *with* Tex. Bus. & Comm. Code Ann. § 2.318 (West 2011) (stating that "this chapter does not provide whether anyone other than a buyer may take advantage of an express or implied warranty of quality made to the buyer or whether the buyer or anyone entitled to take advantage of a warranty made to the buyer may sue a third party other than the immediate seller for deficiencies in the quality of the goods. These matters are left to the courts for their determination."). *See PPG Industries, Inc. v. JMB/Houston Centers Partners Limited Partnership*, 146 S.W.3d 79, 88 (Tex. 2004).

Pursuant to that mandate, in *Nobility Homes of Texas, Inc. v. Shivers*, the Supreme Court of Texas held that a downstream buyer of a mobile home could bring a claim for breach of the implied warranty of merchantability against a remote manufacturer, even though there was no privity of contract between them. *See Nobility Homes*, 557 S.W.2d at 81. In the *Nobility Homes* opinion, the Supreme Court of Texas broadly stated that a manufacturer can be liable to a consumer, without regard to privity, for the economic loss resulting from the manufacturer's breach of the implied warranty of merchantability. *See id*. Though the *Nobility Homes* court did not specifically say that a subsequent buyer who bought the goods knowing that they were used could sue the manufacturer for breach of this implied warranty, the high court did not exclude this possibility. *See id*. at 80–82. Indeed, the *Nobility Homes* court did not even mention whether the mobile home was new or used when the claimant bought it. *See id*. at 77–78, 80–82. In addition, the *Nobility Homes* court indicated that a "consumer" may sue a manufacturer whose alleged breach of the implied warranty of merchantability resulted in economic loss to the "consumer."[6] *See id*. at 77, 81. We conclude that a subsequent buyer of used goods may sue the manufacturer of the goods for a breach of the implied warranty of merchantability that allegedly occurred when the goods left the manufacturer's possession as part of the

---

[6] The *Nobility Homes* court did not specifically define the category of persons to whom the implied warranty of merchantability extends. *See Nobility Homes,* 557 S.W.2d at 80–82.

first sale of the goods, even if the subsequent buyer knew the goods were used when he purchased them.[7] This conclusion is supported by authority from other states.[8] *See Hargett v. Midas Int'l Corp.*, 508 So. 2d 663, 664–65 (Miss. 1987) (holding that subsequent buyer of used motor home could sue manufacturer of motor home for breach of the implied warranty of merchantability that allegedly occurred when the goods left the manufacturer's possession as part of the first sale of the goods); *Perry v. Lawson Ford Tractor Co.*, 613 P.2d 458, 461–62 (Okla. 1980) (holding that subsequent buyer of used combine could sue combine manufacturer for breach of the implied warranty of merchantability, even though combine was used at time of the subsequent purchase); *Western Equipment Co. v. Sheridan Iron Works, Inc*., 605 P.2d 806, 807–10 (Wyo. 1980) (holding that subsequent buyer of used water tanks could sue manufacturer of the tanks for breach of the implied warranty of merchantability, even though water tanks were used at time of the subsequent purchase).

We decline the Man Parties' suggestion that we extend the *Chaq Oil* Rule to preclude a subsequent buyer from bringing a claim for breach of the implied warranty of merchantability against the manufacturer whenever the buyer knew the goods were used when he purchased them. We conclude the trial court erred to the extent it granted judgment notwithstanding the verdict under the second ground asserted in the JNOV Motion. *See Nobility Homes,* 557 S.W.2d at 80–82; *Hargett*, 508 So. 2d at 664–65; *Perry*, 613 P.2d at 461–62; *Western Equipment Co.*, 605 P.2d at 807–10.

---

[7] We conclude that such a subsequent buyer may assert a claim against the manufacturer for breach of the implied warranty of merchantability. Of course, a particular claim still may fail for any number of other reasons, such as disclaimer of the warranty or statute of limitations. But the claim against the manufacturer is not barred simply because the claimant is a subsequent purchaser who bought the goods knowing they were used.

[8] This court's opinion in *Hou-Tex, Inc. v. Landmark Graphics* is not on point. *See* 26 S.W.3d 103, 108–09 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The *Hou-Tex* court held that the claimant could not maintain a claim for breach of the implied warranty of merchantability, but the claimant in that case was never a buyer, end-user, or possessor of the product. *See id*. at 108. In addition, the *Hou-Tex* court did not address whether claimants in other fact patterns could sue for breach of this warranty. *See id*. at 108–09.

**B.     Did the trial court err in requiring privity of contract?**

In the first ground of the JNOV Motion, the Man Parties argued that Shows cannot assert a claim for breach of the implied warranty of merchantability because there is no evidence that the Man Parties sold any goods to Shows, which the Man Parties alleged was required for Shows to recover on this claim.  The trial court agreed and granted the JNOV Motion on the first ground based upon the lack of privity of contract between Shows and the Man Parties.  Privity of contract is not required for Shows to recover based upon an alleged breach of the implied warranty of merchantability.  *See Nobility Homes,* 557 S.W.2d at 80–82.  The trial court erred to the extent it granted judgment notwithstanding the verdict under the first ground asserted in the JNOV Motion.  *See id.*

**C.     Did the trial court err in granting the JNOV Motion based upon an alleged disclaimer by the first purchaser?**

In the fourth ground in the JNOV Motion, the Man Parties asserted that, by means of the document contained in Defendant's Exhibit 1, the first purchaser of the engines effectively disclaimed the implied warranty of merchantability as a matter of law and therefore Shows cannot recover for breach of the implied warranty of merchantability.  Disclaimer of the implied warranty of merchantability is an affirmative defense that must be pleaded under Texas Rule of Civil Procedure 94.  *Johnston v. McKinney American, Inc.*, 9 S.W.3d 271, 280 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  The Man Parties did not plead this affirmative defense.

The Man Parties assert that their disclaimer defense was tried by consent.  They note that Defendant's Exhibit 1, upon which they base their disclaimer argument, was admitted into evidence at trial without objection.  Clark Bruening, the corporate representative for both of the Man Parties, testified that Defendant's Exhibit 1 is the warranty form used from 1998 through 2000 for the type of engine installed on the Vessel in 2000.  Shows testified he found this warranty form on the internet in 2004, when Shows was trying to locate the warranty applicable to the Vessel's engines.  Shows stated that "at first I was hoping it didn't apply, because of the date on the agreement . . .

9

But I learned . . . from MAN that it did apply." The Man Parties' counsel then asked Shows, "That — that version applied?" Shows answered, "I can't tell you that." Neither Bruening nor Shows testified to any personal knowledge regarding the 2000 transaction or the sale of the engines used on the Vessel. Bruening testified that (1) in 2000 Man had a warranty on its engines, (2) Defendant's Exhibit 1 is the warranty form that Man was using in October 2000, (3) Defendant's Exhibit 1 is "the warranty that was in place in 2000 that MAN was using for engines such that Mr. Shows has in his book [sic]."

The word "disclaimer" was not uttered at trial. None of the testimony or questioning addressed or mentioned section V(h) of Defendant's Exhibit 1, which contains a disclaimer of implied warranties. Shows sought to recover based upon a claim for breach of express warranty, and the testimony regarding Defendant's Exhibit 1 was relevant to another issue—the scope of the express warranty. Shows asserted that, as reflected by Plaintiff's Exhibit 3, there was a different express warranty that covered the alleged defect. If Defendant's Exhibit 1 was the express warranty in question, then the valve problem in question would not be covered by the express warranty. Therefore, the admission and use of Defendant's Exhibit 1 at trial was relevant to express-warranty issues and did not necessarily reflect that a disclaimer argument was being advanced. The jury was not charged on disclaimer. On this record, we conclude that the Man Parties' disclaimer defense was not tried by consent.[9] *See Johnston*, 9 S.W.3d at 281–82 (holding that disclaimer defense was not tried by consent). Because the Man Parties did not plead the disclaimer defense and because it was not tried by consent, the Man Parties waived this defense.[10] The trial court erred to the extent it granted judgment notwithstanding the verdict under the fourth ground asserted in the JNOV Motion.[11]

---

[9] The Man Parties cite a case in which the court held that an affirmative defense was tried by consent. *See Johnson v. Structured Asset Servs.*, *LLC*, 148 S.W.3d 711, 719–20 (Tex. App.—Dallas 2004, no pet.). But in that case, the defense was unambiguously raised as an issue at trial. *See id*.

[10] Judgment notwithstanding the verdict would not have been appropriate even if the parties had tried the disclaimer defense by consent. There was no jury finding regarding this defense, and the evidence at trial did not conclusively prove this defense.

[11] We need not and do not address Shows's alternative argument regarding the Magnuson-Moss Warranty

10

**D.    Can this court affirm the trial court's judgment based upon the third ground in the JNOV Motion?**

In the third ground in the JNOV Motion, the Man Parties asserted that any implied warranty of merchantability expired no later than October 2004 (four years after the engines were delivered to the original buyer). The Man Parties argued that Shows cannot recover based upon an implied warranty that expired before the 2005 repairs were made. The Man Parties asserted that this is not a statute-of-limitations issue but rather an issue regarding the expiration of the implied warranty.

The Man Parties claim that the trial court granted the JNOV Motion based upon the third ground. We disagree. In its order granting the JNOV Motion, the trial court specifically states that, contrary to the Man Parties' argument, the third ground is a statute-of-limitations argument. Because the Man Parties did not plead this argument, the trial court states that it is not relevant to the case under review. The order contains general language, in which the trial court states that the JNOV Motion is granted. But in this order the trial court does not state that the JNOV Motion is in all things granted or granted on all grounds.

After reviewing the entire order and its substance, we conclude that the trial court did not grant the third ground of the JNOV Motion.[12] In addition, on appeal, the Man Parties have not asserted a cross-point or cross-issue in which they argue that the third ground would have vitiated the verdict or would have prevented affirmance of the judgment if the trial court had rendered judgment on the verdict. Accordingly, the Man Parties have waived the third ground. *See* Tex. R. App. P. 38.2(b)(1).

---

Act.

[12] Even if the trial court had granted the JNOV Motion based upon the third ground, this ruling would have been error. In the third ground, the Man Parties did not assert that the statute of limitations barred Shows's claim. The Man Parties did not cite any authority for the proposition that the implied warranty of merchantability expires, as opposed to being barred by limitations, four years after delivery of goods to the original buyer, and this argument lacks merit. *See* Tex. Bus. & Comm. Code Ann. § 2.725 (West 2011); *Garcia v. Texas Instruments, Inc.*, 610 S.W.2d 456, 465 (Tex. 1980).

11

**E. Can this court affirm the trial court's judgment because the record contains no evidence that the damages awarded by the jury are reasonable and necessary repair or replacement costs?**

In the fifth ground in the JNOV Motion, the Man Parties asserted that no evidence supports the jury's damage finding because there is no evidence that the costs of the 2005 repair were reasonable and necessary, as required by Texas law. After reviewing the entire order and its substance, we conclude that the trial court did not grant the fifth ground of the JNOV Motion. However, on appeal, the Man Parties have asserted a similar argument in a conditional cross-point. In this cross-point, they argue that Shows is not entitled to recover the damages found by the jury (1) because he failed to designate an expert to testify that the repair or replacement damages he sought were reasonable and necessary and (2) because there is no evidence that the damages awarded by the jury were reasonable and necessary costs of repair or replacement.[13] The jury found that "the cost to replace the engine(s) in 2005" was $89,967 and that this amount would fairly and reasonably compensate Shows for his damages resulting from the breach of the implied warranty of merchantability found by the jury.

The jury charge did not require that the damages found by the jury be reasonable and necessary costs of repair or replacement. At the charge conference, no party objected to the trial court's failure to charge the jury on this requirement.[14] Therefore, this court measures the sufficiency of the evidence using the charge given, even if the charge does not correctly state the law. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (holding that appellate court could not review the sufficiency of the evidence based on a particular legal standard because that standard was not submitted to the jury and no party

---

[13] In their conditional cross-point, the Man Parties do not assert any error regarding the trial court's denial of their motion for directed verdict at the close of Shows's case-in-chief, in which they argued that there was no evidence that the repair costs that Shows sought to recover were reasonable and necessary. Even if the Man Parties had asserted such error, the Man Parties waived this complaint by offering evidence in their case-in-chief and then failing to reurge their directed-verdict motion at the close of the evidence. *See Shindler v. Marr & Assocs.*, 695 S.W.2d 699, 706 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

[14] The Man Parties objected that there was no evidence to support the submission of parts of the actual damages question, but they did not object to the form or the wording of this question.

objected to the charge on this ground or requested that the jury be charged using this standard); *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 283–86 (Tex. App.—Houston [14th Dist.] 2006, no. pet.) (reviewing sufficiency of evidence based on unobjected-to jury instruction and rejecting various arguments based on different legal standards). We presume, without deciding, that Texas law requires that any damages awarded regarding engine replacement in 2005 be reasonable and necessary repair or replacement costs. But even under this presumption, the absence of such evidence would not make the evidence legally insufficient to support the jury's damage finding, because this court reviews that finding under the charge, which does not require that the costs be reasonable and necessary. *See Osterberg*, 12 S.W.3d at 55; *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86. Therefore, the alleged absence of any evidence to support a finding that the damages awarded were reasonable and necessary costs is not a ground that would have vitiated the verdict or would have prevented affirmance of the judgment if the trial court had rendered judgment on the verdict.[15] *See* Tex. R. App. P. 38.2(b)(1). Accordingly, we overrule the Man Parties' sole cross-point.

Concluding that none of the grounds in the JNOV Motion provide a basis for affirming the trial court's judgment, we sustain Shows's first issue.

**F. Did the trial court err in denying the plaintiff's motion for judgment nihil dicit based on a defendant's appearance in the case without filing an answer?**

In his second issue, Shows argues that the trial court erred in denying his motion for judgment nihil dicit based upon Man Germany's failure to file an answer.[16] As noted, Man Germany filed a special appearance but did not file an answer subject to that special

---

[15] The Man Parties also request that this court remand the case to the trial court under Texas Rule of Appellate Procedure 38.2(b)(2) and Texas Rule of Civil Procedure 324(c) for the taking of additional evidence. *See* Tex. R. App. P. 38.2(b)(2); Tex. R. Civ. P. 324(c). But, under these rules a remand for the taking of additional evidence is warranted only if the Man Parties raise a cross-point that requires the taking of such evidence. *See* Tex. R. App. P. 38.2(b)(2); Tex. R. Civ. P. 324(c). Because the Man Parties's cross-point does not require the taking of additional evidence, we deny the Man Parties' request under these rules.

[16] This issue is not moot based upon the sustaining of the first issue because Shows arguably could have obtained a larger money judgment against Man Germany if the trial court had granted his motion for judgment nihil dicit.

13

appearance. Before trial, the trial court denied Man Germany's special appearance; but, Man Germany still did not file an answer before trial began. Man Germany appeared at trial through its counsel and its corporate representative. Though Shows was entitled to seek a judgment nihil dicit against Man Germany based on its failure to answer, Shows did not do so until after he rested his case in chief at trial. At that time, Man Germany still had not filed an answer. The trial court denied Shows's request for a judgment nihil dicit and concluded that Shows waived his right to this relief by proceeding to trial.

Though Shows would have been entitled to seek a judgment nihil dicit before trial, he did not do so and instead proceeded to trial against Man Germany. Thus, the trial court did not err by concluding that Shows waived any right to a judgment nihil dicit. *See Stoner v. Thompson,* 578 S. W.2d 679, 682 (Tex. 1979) (stating that, though there is a difference between default judgments and judgments nihil dicit, the same rules generally apply to both); *Estate of Grimes v. Dorchester Gas Producing Co.*, 707 S.W.2d 196, 204 (Tex. App.—Amarillo 1986, writ ref'd n.r.e.) (holding that plaintiffs waived their right to a default judgment or interlocutory judgment against non-answering defendants by proceeding to trial); *Foster v. L.M.S. Development Co.,* 346 S.W.2d 387, 397 (Tex. Civ. App.—Dallas 1961, writ ref'd n.r.e.) (concluding that even if defendant who participated at trial had failed to file an answer, plaintiffs waived their right to a default judgment by proceeding to trial). Accordingly, we overrule Show's second issue.

### III.   CONCLUSION

Under the *Chaq Oil* Rule, a warranty of merchantability under the Uniform Commercial Code is not implied in a contract for the sale of goods if the buyer purchases the goods knowing that they are used. But this rule does not apply to the case under review, and we decline to extend the *Chaq Oil* Rule to apply to a claim by a subsequent buyer against the manufacturer. Instead, we conclude that a subsequent buyer of used goods may sue the manufacturer of the goods for a breach of the implied warranty of merchantability that allegedly occurred when the goods left the manufacturer's possession as part of the first sale of the goods, even if the subsequent buyer knew the

14

goods were used when he purchased them. Because none of the grounds in the JNOV Motion provide a basis for affirming the trial court's judgment, we sustain Shows's first issue. Under the charge submitted to the jury, the Man Parties' cross-point lacks merit. In addition, the trial court did not err in concluding that Shows waived any right he had to a judgment nihil dicit against Man Germany by proceeding to trial without first seeking such a judgment. Accordingly, we reverse the trial court's judgment and remand with instructions for the trial court to adjudicate Shows's request for attorney's fees and then to render judgment on the jury's verdict, with attorney's fees to be awarded as determined by the trial court on remand.[17]

/s/ Kem Thompson Frost
   Justice

Panel consists of Chief Justice Hedges and Justices Frost, and Christopher.

---

[17] The parties stipulated before trial that Shows's request for attorney's fees would be tried separately to the bench.